## LUCAS, COMMISSIONER OF INTERNAL REVENUE, *v.* KANSAS CITY STRUCTURAL STEEL COMPANY.

Nos. 323 and 324. Argued March 13, 14, 1930.—Decided April 14, 1930.

*Solicitor General Hughes,* with whom *Assistant Attorney General Youngquist, Messrs. Sewall Key* and *Randolph C. Shaw,* Special Assistants to the Attorney General, *Clarence M. Charest,* General Counsel, Bureau of Internal Revenue, and *Allin H. Pierce,* Special Attorney, Bureau of Internal Revenue, were on the brief, for petitioner.

*Mr. Armwell L. Cooper,* with whom *Messrs. Ellison A. Neel, Wm. E. Kemp, Wallace Sutherland,* and *John P. Cooper* were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Kansas City Structural Steel Company, a Missouri concern, appealed to the United States Board of Tax Appeals from determinations by the Commissioner of Internal Revenue which made an increase of $7,656.74 in

the company's 1918 income tax and of $15,953.36 in its 1920 income tax.[1] These additions were due wholly to changes made by the Commissioner in the inventory valuation of material carried in stock. The Company valued at a constant price all the material which did not exceed in quantity what was said to be the normal stock on hand.[2] The Commissioner revalued this at current market prices. The changes resulted in increasing the December, 1918, inventory by $165,849.46 and the December 31, 1920, inventory by $117,113.61. The Board of Tax Appeals sustained the Commissioner's action. 11 B. T. A. 877. Its decision was reversed by the United States Circuit Court of Appeals for the Eighth Circuit. 33 F. (2d) 53. This Court granted writs of certiorari, 280 U. S. 543.

Section 203 of the Revenue Act of 1918, Feb. 24, 1919, c. 18, 40 Stat. 1057, 1060, provides: " That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."[3] Regulations 45 (1920 edition, as amended by Treasury

---

[1] Other matters were in dispute before the Commissioner and the Board, but these are the only disputed items carried to the Circuit Court of Appeals and presented for our decision. No. 323 involves the tax for 1918; No. 324, that for 1920. Except for the years and the amounts the facts in the two cases are identical.

[2] The system followed, if intended as a method of inventory, is known to accounting as the " base stock," " minimum " or " cushion " method.

[3] This provision was incorporated in every Revenue Act since 1918. 1921, c. 136, § 203, 42 Stat. 227, 231; 1924, c. 234, § 205, 43 Stat. 253, 260; 1926, c. 27, § 205, 44 Stat. 9, 16; 1928, c. 852, § 22 (c), 45 Stat. 791, 799. Although no similar provision was made in earlier acts, regulations of the Department supplied it. Internal Revenue Bureau, Regulations 31, arts. 2 (3) & (4); Regulations 33, art. 161; Regulations 33 (Revised), art. 91, 92, 120.

Decision 3296) provides, in Article 1581, that "inventories at the beginning and end of each year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor." Article 1582 declares that the basis of valuation "most commonly used by business concerns and which meets the requirements of the revenue act is (a) cost or (b) cost or market, whichever is lower"; that "goods taken in the inventory which have been so intermingled that they cannot be identified with specific invoices will be deemed to be . . . the goods most recently purchased"; that the "taxpayer must satisfy the commissioner of the correctness of the prices adopted"; and that: "(d) Using a constant price or nominal value for a so-called normal quantity of materials or goods in stock" is not in accord with the regulations.[4]

The Company is engaged in the fabrication and erection of steel plates for buildings, bridges, tanks, etc. It does not carry finished products in stock, but fabricates the plates for specific structures or contracts. It orders material from the mills for each structure or contract; but it also keeps a supply on hand in order "to insure the prompt and orderly execution of contracts in view of delay, etc., incident to shipments from the mills and other exigencies affecting the availability for use when needed of material ordered for a particular job." Material is taken from this supply as and when needed; and the stock is subsequently replenished.[5] On December 31,

---

[4] The provision relative to the valuation of inventories at a constant price was, in effect, a restatement of a Treasury ruling promulgated in September, 1919, as Advisory Tax Board Ruling No. 65, T. B. R. 65, C. B. 1, 51.

[5] The stipulated facts recite: "When such material is used it is charged to the contract at its replacement cost and is promptly replaced with material of a like kind and in a like quantity." The phrase "charged to the contract" evidently means that it is so charged in those accounts on the Company's books which are designed to guide it in determining the cost of a particular job.

1916, the quantity in stock was 5,554 tons. The Company then inventoried it at cost—$1.70 per hundredweight f. o. b. Pittsburgh. At the close of each year thereafter until 1921, the Company inventoried its stock on hand up to 5,554 tons at that price, regardless of its actual cost or the market, and the excess, if any, at cost or market price, whichever was lower. In the tax years in question, the market was much higher. It is not shown what the actual cost of the stock then on hand was, or that any of it had cost as little as $1.70.[6] The Commissioner therefore revalued the entire stock at market price, with the consequent increase in the taxes complained of.

*First.* Whether in a particular business inventories are necessary for the determination of income is a practical question left by the statute to the judgment of the Commissioner. On that question, he and the Company did not differ. In every year, it, without any question or protest, used inventories in making its return. The dispute was merely on the method of valuation to be adopted for that part of the stock which it calls its normal stock. Throughout, the Company valued at cost or market prices all stock in excess of 5,554 tons; and since 1921 has so valued all the stock on hand.

It is not contested that if inventories are necessary in order to determine the Company's income, the "base stock" method does not fulfill the desiderata. The Federal income tax system is based upon an annual accounting period. This requires that gains or losses be accounted for in the year in which they are realized. The purpose of the inventories is to assign to each period its profits and losses. In years of rising prices, the "base stock"

---

[6] In September, 1917, the Government fixed the price of structural shapes, f. o. b. Pittsburgh at $3 per hundredweight and of tank plates at $3.25. After relinquishment of Government control, the prices fell. Those in 1920 were, for structural steel $2.45, for tank plates $2.65. In 1921 the prices fell to $1.50.

method causes an understatement of income; for it disregards the gains actually realized through liquidation of low price stock on a high price market. In times of falling prices, it causes an overstatement of income; for it ignores the losses which result from the consumption of high price stock. This method may, like many reserves which business men set up on their books for their own purposes, serve to equalize the results of operations during a series of years. But it is inconsistent with the annual accounting required by Congress for income tax purposes. It results in offsetting an inventory gain of one year against an inventory loss of another, obscures the true gain or loss of the tax year and, thus, misrepresents the facts. It does not conform with the general or best accounting methods and is apparently obsolete.[7] The Company disclaims any defense of the base stock method; and the lower court disapproved it.

*Second.* It is urged, however, that the inventory requirement is not applicable to the Company's stock to the extent of 5,554 tons; that the Company is not a dealer, manufacturer or producer, but rather a contractor or builder; that its income results from the performance of its construction contracts; that the material in its stand-by stock has no relation to these contracts, the contract prices, or the Company's profits; that the material from this stock is only borrowed for specific jobs and is promptly replaced in kind; that it is not an income pro-

---

[7] In a well reasoned report, the Advisory Tax Board, in 1919, ruled that the "base stock" "minimum" or "cushion" method did not withstand "the changing tests of time" and could not be approved. Since then, all Regulations of the Department expressly prohibited its use. See Regulations 45, art. 1582; Regulations 62, art. 1582; Regulations 65, art. 1612; Regulations 69, art. 1612; Regulations 74, art. 102. No case has been found in which any business concern has challenged the correctness of these prohibitions and they have been approved by accountants. 1 Montgomery, Income Tax Procedure (1926 ed.) 712; Klein, Federal Income Taxation (1929), ¶ 14: 13(d), p. 375.

ducing factor, but is like the Company's machinery and equipment; and that any accretion to the value of this material is of no consequence until a final liquidation. The contentions are inconsistent with the Company's practice and are unsound.

The Company's purchase and production of steel plates is obviously an income producing factor. Throughout the years, the Company has varying amounts of material on hand. The value of the particular material used, at the time of use, plainly affects its profits. That the material is replaced in kind and its amount kept within some limits is not exceptional and is of no significance. Most concerns strive ordinarily to carry no more stock than is required for the safe and profitable conduct of the business. They plan neither to run short nor to overstock. They replace supplies as they are consumed. And the cost or value of the new material is properly reflected in the later inventories and returns. There is nothing peculiar about the 5,554 tons,—except that that happened to be the amount of stock on hand on December 31, 1916. It is not a permanent stock, like machinery or equipment. Nor is it merely depleted by borrowing and promptly restored to that fixed size. On the contrary, the stock has fluctuated from about 3,000 tons in 1918 to 11,000 tons in 1920.[8] There is no stand-

---

[8] The quantities on hand at the end of each of the several years were:

| | | |
|---|---|---|
| December 31, 1916 | 5,554 | tons |
| December 31, 1917 | 5,298 | tons |
| December 31, 1918 | 5,887 | tons |
| December 31, 1919 | 6,957 | tons |
| December 31, 1920 | 7,246 | tons |
| December 31, 1921 | 4,512 | tons |
| December 31, 1922 | 9,341 | tons |
| December 31, 1923 | 8,732 | tons |
| December 31, 1924 | 10,411 | tons |
| December 31, 1925 | 7,202 | tons |
| December 31, 1926 | 8,126 | tons |

by stock set aside and earmarked as such. The material is all commingled and is indiscriminately used in production, as and when needed. No reason is given for excepting 5,554 tons—no more and no less. To draw an artificial line at that amount would distort the computation of income in the accounting periods, although the errors might be equalized in a series of years. Since inventories are properly deemed necessary, the exception of that or any amount is nothing but the use of the discarded " base stock " method.

The Company's case falls far short of meeting the heavy burden of proving that the Commissioner's action was plainly arbitrary. Compare *Lucas* v. *American Code Co.*, 280 U. S. 445, 449; *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, 559.

*Reversed.*

The CHIEF JUSTICE did not take part in this case.