SMITH v. DEAN, Collector of Internal Revenue.

No. 391.

District Court, S. D. Ohio, W. D.

June 4, 1931.

James & Coolidge, of Dayton, Ohio, for plaintiff.

H. E. Mau, U. S. Dist. Atty., Harry Abrams, Asst. U. S. Dist. Atty., and Robert H. French, Asst. U. S. Dist. Atty., all of Cincinnati, Ohio, for defendant.

NEVIN, District Judge.

This cause was heard upon the petition of Frank Hill Smith, the plaintiff herein, praying recovery against Charles M. Dean, defendant, for $2,826.95, which it is alleged was illegally collected by Charles M. Dean as collector of internal revenue of the United States. The answer of the government denied that the tax was illegally collected. The case was tried before the court, a jury having been waived in writing. At the conclusion of the case the government made a motion for judgment on the evidence and the pleadings.

It appears from the evidence that the plaintiff, Frank Hill Smith, was an engineer at Dayton, Ohio, and as such engineer had

done work for the Elwood Myers Company, through a corporation known as the Frank Hill Smith, Incorporated, of which he owned 87 per cent. of the stock. Messrs. Elwood Myers and Ira Hatch, of the Elwood Myers Company, desired to make a loan of $25,-000 for the purpose of buying some additional stock of the Elwood Myers Company and asked plaintiff to introduce them at the Winters National Bank, Dayton, Ohio, of which plaintiff was then a director. Plaintiff took them to the bank and introduced them and told the officers of the bank that they were perfectly good and he would see to it that they did not lose anything by the transaction. The loan was made, and Messrs. Hatch and Myers gave as collateral 50 shares of preferred and 200 shares of common stock of the Elwood Myers Company and a $1,000 Liberty bond. The plaintiff neither signed nor indorsed any note guaranteeing payment of the loan, but considered it a moral obligation.

In 1921, bank examiners, examining the affairs of the bank, requested that the Myers and Hatch notes be taken out of the bank. When the notes came up for consideration early in 1922, plaintiff, as a member of the board of directors, heard that the Elwood Myers Company was in financial difficulty and that the examiners had ordered that the notes be taken out of the assets of the bank. The officers of the bank suggested that Mr. Smith would have to do something about it. He thereupon delivered to the officers of the bank 150 shares of stock of the Winters National Bank of Dayton, Ohio, which, he stated, cost $160 a share. Plaintiff was thereupon given the notes executed by Messrs. Myers and Hatch, together with the collateral securing them; that is, 200 shares of common and 50 shares of preferred stock of the Elwood Myers Company in return. The Elwood Myers Company at this time was in financial difficulties and whether or not recovery would be made was unknown. Plaintiff, thereafter, just prior to the end of the taxable year 1922, to wit, December 8, 1922, sold this stock to his secretary for the sum of $5, which the record shows was done so there would be a showing that it was sold during the taxable year. Shortly after March 15, 1923, he repurchased the stock from his secretary and still had it in his possession at the time of trial.

Plaintiff, on March 15, 1923, filed with the collector of internal revenue for the First collection district of Ohio, his income tax return for the taxable year 1922, deducting therefrom as a loss on the Elwood Myers Company stock the sum of $24,995, being the difference between the value of the stock when he received it on April 26, 1922, and the date he sold it to his secretary in December of 1922, at which time he received $5.

On August 18, 1927, plaintiff filed his claim for refund in which he claimed a deduction of $20,500, being the amount of loss sustained upon exchange by taxpayer of Winters National Bank stock for stock of the Elwood Myers Company. In his statement of facts attached to the claim for refund, plaintiff stated that "this was an exchange of stock in the Winters National Bank, which had cost him $24,000.00 subsequent to 1913, for 50 shares of preferred and 200 shares of common stock of the Elwood Myers Company." He further stated (in said statement) that: "The common stock of Elwood Myers Company, at time of the exchange, had a value of not over $5.00 per share and the preferred stock had a value of not over $50.00 per share, making a total value of the stock received $3500.00. Since the Winters National Bank stock given in exchange therefor cost $24,000.00, the taxpayer in 1922 suffered a loss of $20,500.00, which the Commissioner erroneously failed to allow as a deduction from income."

It is a well-settled rule of law that the burden of proof is upon the taxpayer to show that the Commissioner illegally made the assessment and that his action in so doing was arbitrary. In Niles Bement Pond Co. v. United States, 281 U. S. 357, 361, 50 S. Ct. 251, 252, 74 L. Ed. 901, it is said: "The presumption is that taxes paid are rightly collected upon assessments correctly made by the Commissioner, and in a suit to recover them the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection."

In the case of Lucas, Commissioner of Internal Revenue, v. Kansas City Structural Steel Co., 281 U. S. 265, 50 S. Ct. 263, 74 L. Ed. 848, the fourth syllabus is as follows: "A taxpayer appealing from an order of the Board of Tax Appeals sustaining an increased income tax resulting from changes made by the Commissioner in the taxpayer's inventory, has the burden of proving that the Commissioner's action was plainly arbitrary."

The authorities hold that it is necessary for a litigant seeking recovery of taxes allegedly illegally collected, to come into court upon the same facts presented to the Com-

missioner. Red Wing Malting Co. v. Willcuts (C. C. A.) 15 F.(2d) 626, 49 A. L. R. 459, 634, certiorari denied 273 U. S. 763, 47 S. Ct. 476, 71 L. Ed. 879; Arizona Commercial Mining Co. v. Casey (D. C.) 32 F.(2d) 288; Paul Jones & Co. v. Lucas (D. C.) 33 F.(2d) 907, 908.

It is a condition imposed by Congress, or, as said, a part of the government's consent to be sued, that a verified refund application must first have been filed in which all facts relied upon to establish the right to refund are set forth. The government consents to be sued upon any action relating to excess collection of taxes if grounds of action have first been called to the attention of the revenue authorities.

A recent case is that of Connell v. Hopkins (D. C.) 43 F.(2d) 773, the first syllabus of which is as follows: "Taxpayer before suing to recover illegal tax must ask for refund on ground expected to be alleged in suit." Another case recently decided along the same line is that of Henry Prentiss & Co. v. United States (D. C.) 46 F.(2d) 159, in which a similar holding was made. See also Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253.

Plaintiff in his petition and also in his claim for refund characterizes the above transaction as an "exchange," and alleges he is entitled to a deduction of $20,500 as a loss on an exchange of personal property for personal property. In his testimony before the court, plaintiff (taxpayer) testified that he sold 150 shares of stock of the Winters National Bank of Dayton, Ohio. He further testified that he received from the bank the 200 shares of common and 50 shares of preferred stock of the Elwood Myers Company, held as security on the Hatch and Myers note.

Under such circumstances plaintiff cannot recover. As stated above, plaintiff in his claim for refund treated the transaction involved in the case as exchange of personal property for personal property.

Section 202 (c) of the Revenue Act of 1921 (42 Stat. 229) provides: "For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value."

It is apparent to the court that the property received by plaintiff in this case, to wit, the Elwood Myers stock, did not have a readily realizable market value. The testimony of Mr. Tompert of the Winters National Bank was to the effect that they had a number of times tried to sell the stock and were unable to do so. The company was in the hands of a bankers' committee. Efforts were being made to save it. The stock was not worthless, but had some value. However, it was not readily marketable nor was it listed or quoted on any stock exchange. Plaintiff maintained before the Commissioner of Internal Revenue, and presented an affidavit from a broker in Springfield, Ohio, in support thereof, and also alleged in his petition, that the stock had an estimated worth of approximately $3,500.

Plaintiff has not brought his case within the exception under section 202 (c) of the Revenue Act of 1921, it not having been shown that the Elwood Myers stock had a readily realizable market value, and therefore no gain or loss can be recognized.

It is the opinion of the court that the plaintiff has not sustained the burden of proof placed upon him by law to show that the assessment was illegally made.

The motion of the government for judgment should be sustained and an entry may be prepared accordingly.