## INDUSTRIAL LUMBER CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6137.

Circuit Court of Appeals, Fifth Circuit.
May 3, 1932.

W. W. Spalding, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp.

Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Dean P. Kimball, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALK-ER, Circuit Judges.

WALKER, Circuit Judge.

The Commissioner of Internal Revenue assessed against the petitioner corporation, a manufacturer of lumber, a deficiency of income and profits taxes for the year 1920, that deficiency being a result of the rejection by the commissioner of the petitioner's closing inventory for that year, and the disallowance by the commissioner of deductions claimed by the petitioner from the total shown by an alternative inventory submitted by the petitioner after the rejection of the inventory originally submitted. The closing inventory originally submitted by the petitioner, which kept its books on the accrual basis, purported to be "at cost or market, whichever is lower," as authorized by regulation. Regulations 45, art. 1582. In taking that inventory petitioner ascertained the cost and the then prevailing market value of each item and listed that item at the lower of the two figures, with a result that where cost of the article was lower than market it was listed at cost, and where cost of the article was higher than market it was listed at market. What the petitioner treated as the cost of lumber of any grade was the so-called average cost, which was arrived at by ascertaining the total cost—including that of the raw material (the timber), sawing, handling and similar expenses —of all lumber of all grades that had reached the same stage of manufacture, and then dividing that total by the total number of feet of all grades manufactured; the amount so ascertained being treated as the cost of a foot of lumber of any grade, with a result that a given number of feet of lumber of the highest grade was assigned the same cost as the same number of feet of the lowest grade which had reached the same stage of manufacture. Petitioner's stock contained five grades of lumber, the grades being determined by the presence or absence of knots or other defects, the highest grade being designated "B—and—better," and the other grades being 1, 2, 3, and 4; the last stated being the lowest. The prices of different grades of lumber vary, according to condition and market demands, from $120 a thousand feet for the highest finished grade to $8 a thousand feet for the lowest

grade. The findings of fact included the following as to petitioner's business: "About 25 per cent of its product as it came fresh cut from the mill was in the form of railroad bridge timbers and beams, which were sold green, while the remaining 75 per cent required further processing before marketing. Under the methods followed by the petitioner about one-third of this residue, or 25 per cent of the whole, was cured in kilns, while the remainder or 50 per cent of the whole, was air dried in the yards. Kiln drying required from three to five days and air drying from three to four months. After curing, the stock not held for sale in the rough was sent to the planing mills where it was dressed and trimmed in final preparation for market."

After the commissioner had refused to accept the above-described inventory originally submitted, the petitioner submitted another inventory, in which the items were listed at market; the total at market being less than the total at cost. In that inventory, the petitioner claimed deductions from the total listed market value of the goods inventoried of stated amounts for, respectively, shrinkage and breakage, degrading, and discount. Those deductions were disallowed by the commissioner. The rulings of the commissioner were sustained by the Board of Tax Appeals.

It appears from the record that a ground relied on for rejecting the closing inventory originally submitted by the petitioner was that the evidence showed that petitioner in making that inventory applied to the several items listed the actual sale price for market, but not the actual cost price for cost. With reference to inventories the applicable statute provides: "That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." Section 203, Revenue Act of 1918, 40 Stat. 1057, 1060.

Regulations adopted in the exercise of authority conferred by the cited act, § 1309 (40 Stat. 1143), include those set out in the margin.[1]

---

[1] "Need of inventories.—In order to reflect the net income correctly, inventories at the beginning and ending of each year are necessary in every case in which the production, purchase, or sale of mer-

The burden was on the petitioner to prove that the amount it assigned to an item listed in the inventory as the cost of that item was, at least approximately, the actual cost of it. In the absence of evidence tending to prove that the cost per foot of the raw material which went into lumber of one grade was the same as the cost per foot of the raw material which went into lumber of a different grade, the petitioner was not warranted in assuming that those costs were the same, though the other elements of the total costs were the same. It is a matter of common knowledge, of which judicial notice may be taken, that ordinarily the cost to a lumber manufacturer of the raw material—stumpage or logs—from which lumber is produced, is based upon estimates as to the amounts and grades of lumber that may be expected to be produced from it, the price or cost of timber a large percentage of which may be expected to go into high grade lumber being higher than that of timber having the same footage, but from which a substantially smaller percentage of high grade and high priced lumber may be expected to be produced. It is not unusual for estimates made by timber cruisers to be availed of by prospective purchasers of timber. It reasonably may be inferred or supposed that ordinarily the estimates which in-

chandise is an income-producing factor. The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption, or use in productive processes, together with all finished or partly finished goods. * * * "

Regulations 45 (1920 Ed.), Art. 1581.

"Inventories at cost.—Cost means:

"(1) In the case of merchandise purchased, the invoice price less trade or other discounts, except strictly cash discounts, approximating a fair interest rate, which may be deducted or not at the option of the taxpayer, provided a consistent course is followed. To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods.

"(2) In the case of merchandise produced by the taxpayer, (a) the cost of raw materials and supplies entering into or consumed in connection with the product, (b) expenditures for direct labor, (c) indirect expenses incident to and necessary for the production of the particular product, including in such indirect expenses a reasonable proportion of management expenses, but not including any cost of selling or return on capital whether by way of interest or profit. In any industry in which the usual rules for computation of cost of production are inapplicable, costs may be approximated upon such basis as may be reasonable and in conformity with established trade practice in the particular industry."

Ib., Art. 1583.

"Inventories at market.—Under ordinary circumstances, 'market' means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which ordinarily purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor and burden) in goods in process of manufacture and in finished goods on hand; exclusive, however, of goods on hand or in process of manufacture for delivery upon firm sales contracts at fixed prices entered into before the date of the inventory, which goods must be inventoried at cost. Where no open market quotations are available, the taxpayer must use such evidence of a fair market price at the date or dates nearest the inventory as may be available, such as specific transactions in reasonable volume entered into in good faith, or compensation paid for cancellation of contracts for purchase commitments. Where, owing to abnormal conditions, the taxpayer has regularly sold such merchandise at prices lower than the current bid price as above defined, the inventory may be valued at such prices, and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. Prices which vary materially from the actual prices so ascertained will not be accepted as reflecting the market and the penalties prescribed for filing false and fraudulent returns may be asserted. Goods in process of manufacture may be valued for purposes of the inventory on the lowest of the following bases: (1) The replacement or reproduction cost prevailing at the date of the inventory; or (2) the proper proportionate part of the actual finished cost; or, under abnormal conditions, (3) the proper proportionate part of the sales price of the finished product, account being taken in all cases of the proportionate part of the total cost of basic elements (materials, labor and burden) represented in such goods in process of manufacture at the stages at which they are found on the date of the inventory. The inventories of taxpayers on whatever basis taken will be subject to investigation by the Commissioner, and the taxpayer must satisfy the Commissioner of the correctness of the prices adopted. He must be prepared to show both the cost and the market price of each article included in the inventory."

Ib. Art. 1584.

"Inventories of lumber manufacturers.—

"1. Because of the impracticability of determining accurately the costs properly assignable to each species, grade, and dimension of lumber making up the product of the mill, lumber manufacturers may use as a basis for pricing inventories the average cost to the manufacturer of producing the inventoried products during the taxable year for which the return of net income is made.

"2. If the quantity of lumber on hand at the time of inventory is greater than the total quantity of lumber produced during the current taxable year, it is evident that the excess stock has been carried over from the previous year's production, and such excess shall be valued at the average cost of production for the preceding taxable year.

"3. A taxpayer who regularly allocates in his books of account such average cost to the different kinds and grades of lumber in proportion to the selling value of such kinds and grades may, subject in each case to the approval of the Commissioner upon audit of the return, make his returns of net income on that basis. * * * "

Ib. Art. 1587.

"Valuation of inventories.—The Act provides two tests to which each inventory must conform—(1) It must conform as nearly as may be to the best accounting practice in the trade or business and (2) it must clearly reflect the income. It follows, therefore, that inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation, so long as the method or basis used is substantially in accord with these regulations. * * * "

Ib. Art. 1582.

fluence an experienced and prudent lumber manufacturer in agreeing on the price to be paid for timber bought in effect amount to roughly determining the values of the different parts of the timber which, respectively, will, in the process of manufacturing, go into different grades of lumber, with the results that the agreed on price for the timber is the aggregate of the values assigned to the different parts of it which are expected to go into different grades of lumber, and that substantially different costs per foot will be attributed to the different parts of the timber which, respectively, will go into different grades of lumber. There was no evidence tending to prove that the actual cost per foot of the raw material which went into grade "B—and—better" lumber listed in the inventory was, even approximately, the same as the cost per foot of the raw material which went into No. 4 lumber, or any of the other numbered grades of lumber manufactured by the petitioner. There was no evidence tending to prove that the petitioner, in determining the cost of the raw material from which was produced the several items of lumber listed in its original inventory conformed to an accounting practice which had been adopted or followed in the lumber manufacturing trade or business, or to a practice which previously had been followed by the petitioner itself in its business. It is not denied that it was impracticable for the petitioner to determine accurately the costs properly assignable to each grade of lumber listed in its inventory. That the officials charged with the administration of the statute recognized the impracticability of a lumber manufacturer doing so is indicated by an above set out regulation (article 1587), which permits the assignment to lumber of any grade of the average cost, not of lumber of all grades, but of lumber of that grade. If the petitioner, in determining the cost of each item of lumber listed in its original inventory, had arrived at the cost of the raw material used in producing that lumber by allocating to each foot of the raw material used in producing all the grades of lumber the average cost per foot of all the raw material so used in producing all grades of lumber in proportion to the selling value per foot of lumber of the different grades, it well might have been contended that such action was permissible by reason of it being analogous to a practice which was sanctioned by an above set out regulation (article 1584—3, supra). But the evidence shows that the petitioner, instead of allocating to each foot of raw material used in producing the several grades of lumber the average cost per foot of the timber used in producing lumber of all those grades in proportion to the selling value per foot of such grades of lumber, attributed to each foot of timber used in producing any grade of lumber the same cost, without any regard to the widely differing selling values per foot of the several grades. In doing so the petitioner assumed the existence of a fact which no evidence adduced tended to prove. Furthermore, the fact so assumed lacks the appearance of probability, as it cannot reasonably be supposed that the cost per foot to an experienced lumber manufacturer of the part of a saw log from which grade "B—and—better" lumber was expected to be produced would be the same as the cost per foot of the parts of that log which were expected to go into lower grades of lumber and into waste or refuse. It is apparent that if the costs per foot of the timber used in producing two lots of lumber of different grades but having the same footage are substantially different the costs of the two lots are different, though other elements of the last-mentioned costs are the same. It well may be considered that, in the absence of supporting evidence, it is arbitrary and unreasonable to assign to timber used in producing grade "B—and—better" lumber the same cost per foot as is assigned to timber used in producing No. 4 lumber, and that a result of so doing is to misrepresent the costs per foot of lumber of both the grades mentioned. It is obvious that in determining which is lower, market or cost, a false result must be reached if for market the actual market price is used, but for cost something other than actual cost is used. We think it fairly appears from the record that the rejection of the closing inventory originally submitted by the petitioner was warranted because the evidence showed that in making that inventory the petitioner did not assign to the several listed items of lumber the actual costs of those items, and that what was treated as constituting such costs was substantially different from the actual costs. Certainly it does not appear from the record that the petitioner sustained the burden of proving that the commissioner acted arbitrarily in concluding that the costs assigned to the several items listed in the original closing inventory were not the actual costs of those items, and that it was not shown that the valuations assigned to the several listed items were arrived at by com-

paring actual cost with actual market, and taking the lower of the two figures. Lucas v. Structural Steel Co., 281 U. S. 264, 271, 50 S. Ct. 263, 74 L. Ed. 848.

What is complained of with reference to the closing inventory at market which was submitted by the petitioner after the rejection of the one above considered is the disallowance of claimed deductions from the stated total market value of the items listed in that inventory, the amounts sought to be deducted being for shrinkage and breakage, for degrade, and for discount. Evidence showed that lumber was graded as it came from the saw, and was then stacked in piles and inventoried. The deductions claimed for shrinkage and breakage, and for degrade, were based on estimates of losses due to lumber shrinking and being broken between the time it was first graded and stacked and the time of its sale and shipment, and to changes of condition of some lumber during that time having the effect of requiring it to be assigned to a grade lower than the one to which previously it was assigned. The deduction of a stated amount as discount was based on the contention that such a deduction from the total market value shown was allowable in order to bring the inventory to a net realizable figure at the inventory date. Regulations applicable to inventories required to be furnished by a lumber manufacturer taxpayer do not indicate that it was contemplated by the officials who prepared those regulations that such deductions as the ones claimed would be allowable. It was not made to appear that the petitioner, in making such deductions, conformed to an established accounting practice in the lumber manufacturing business. The claimed deductions based on estimated losses due to shrinkage and breakage, and resulting from changes in conditions calling for degrading, covered alleged losses sustained after the expiration of the year 1920. The amounts of losses due to things which occurred entirely in a subsequent year were not factors proper to be considered in determining income in 1920. The market value of stocks on hand at the end of that year was not subject to be reduced by losses or deterioration which occurred in a subsequent year. The disallowance of the two claimed deductions now under consideration is sustainable on the ground that the evidence was such as justified findings that losses in the amounts and due to the causes stated were not proved to have been sustained prior to the end of the year 1920, and that the

amounts of whatever losses due to the causes stated which may have been sustained prior or to the end of the year 1920 were not established by evidence.

The inventory now in question being one at market, the prices therein assigned to the articles listed are to be taken to be the current prices prevailing at the date of the inventory for the goods listed, arrived at in a way prescribed by an applicable regulation (articles 1584 and 1587, supra), or in accordance with an approved accounting practice. The definition of market found in a just-mentioned regulation indicates the absence of any intention to make the conclusiveness of the total of such assigned prices shown by the inventory dependent upon the taxpayer being able to realize in cash the amount of that total at the inventory date, or to permit the making of such deductions as those claimed by the petitioner in order to bring the inventory to a net realizable figure at the inventory date. So far as we are advised, nothing in any regulation adopted or in any established practice indicates an intention to make the closing inventory required serve the purpose of showing what the taxpayer could realize in cash for his entire stock at the date of the inventory. It is not to be assumed that ordinarily the total amount shown by an inventory can, at the date of it, be realized in cash for the goods inventoried. It well may be supposed that not infrequently, even when conditions are normal, it may be found to be impossible to do so. Ability to do so is not to be accepted as a test of the sufficiency of an inventory in the absence of authentic evidence of an authoritative recognition of it as such. It seems reasonable to think that the adoption of the requirement that a lumber manufacturer taxpayer furnish a closing inventory was influenced by a purpose to enable tax officials—by examining that inventory in connection with the taxpayer's opening inventory for the same tax year, showings as to additions to stock during that year, sales, receipts, and expenditures, and other factors proper to be considered—to determine what, if any, part of the taxpayer's income (his profits or gains) went into the goods listed in the closing inventory. It is a common practice to take inventories at cost. Inventory at market is a substitute for inventory at cost. The petitioner had, and exercised, the election to make its closing inventory at market, because when the inventory was taken market was lower than cost. The regulation permitting this to be done evi-

dences the conclusion that it is fair and reasonable to count at its market value at the time a closing inventory is taken the part, if any, of the taxpayer's income which had gone into goods on hand at the end of the year, though at the time that part of his income was acquired by the taxpayer its value was more than that indicated by the inventory. It was not made to appear that under any regulation adopted or any established accounting practice a taxpayer is entitled to deduct from the total shown by an inventory, whether taken at cost or at market, the amount of a discount required to bring that total to a sum which, at the date of the inventory, could be realized in cash for the goods inventoried. Nor was it made to appear that the allowance of the claimed deduction now under consideration was required to make the inventory a proper factor in the clear reflection of income. A result of allowing that deduction would be to make the inventory one, not at market, but at lower than market when market, as defined by Regulations, the reasonableness or validity of which has not been challenged, was lower than cost. Certainly it cannot properly be said that the action of tax officials now under consideration was violative of any adopted regulation, of any established practice in the lumber manufacturing business, or of any recognized rule of law. The practice adopted by the commissioner and the Board of Tax Appeals with reference to claimed deductions from the total of an inventory taken at market is not to be interfered with unless clearly unlawful. Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 74 L. Ed. 538.

For the reasons indicated we conclude that none of the complained of actions of the commissioner and the Board of Tax Appeals was erroneous.

The petition is denied.