## HUNT v. UNITED STATES.
### No. J-556.

Court of Claims.
July 5, 1932.

This is a suit to recover a portion of individual income taxes paid for the calendar year 1920. Plaintiff's case is founded upon a contention that the closing inventory of a co-partnership of which he was an equal member was valued contrary to the provisions of article 1584 of Treasury Regulations 45, in that a manufactured product on hand should have been valued at market at the place where manufactured instead of f. o. b. cars for shipment.

This case having been heard by the Court of Claims, the court, upon the report of a commissioner and the evidence, makes the following special findings of fact:

1. Plaintiff is a citizen of the United States, and resides at Sewanee, Tenn.

2. During all of the year 1920 plaintiff was an equal partner with G. I. Frazier in the operation of a partnership known as Frazier & Hunt. The partnership was engaged in manufacturing pieces of timber into barrel staves, operating a number of mills at various places in Tennessee some ten or twelve miles from railroad stations.

3. On March 13, 1921, the plaintiff filed with the collector of internal revenue his income tax return for the calendar year 1920, disclosing a net income of $40,968.63 and a tax liability of $6,525.51. Of this tax, $1,-239.84 was paid September 15, 1921, $1,631.-37 on December 15, 1921, and the balance at earlier dates. Plaintiff's return included in the net income his distributive share from the aforementioned partnership in the sum of $37,825.38.

In October, 1924, the Commissioner of Internal Revenue assessed an additional amount against plaintiff as taxes for the year 1920 in the sum of $54.00, which was paid November 10, 1924. This additional tax was due to the commissioner's increasing the distributive share of the plaintiff from the partnership from $37,825.38 to $38,025.38.

4. The return of the partnership for the year 1920 showed an inventory of merchandise on hand on December 31, 1920, in the amount of $43,260.80, representing 1,081,520 pieces of timber, computed at $40 per thousand. The partnership income for the year 1920, as computed by the commissioner, was $76,577.51, which reflected the closing inventory of $43,260.80. The inventory of staves made by Frazier & Hunt was prepared at the office at Nashville, Tenn., from reports made to that office by plaintiff showing the number of staves produced and the expenses of production.

5. From the beginning of the year 1920 until August the market for staves was very brisk, staves selling at the mill, in May, at $75 per thousand, and there were thereafter increases in prices, the peak prices occurring in July. After August there was a gradual decline in prices, and in December, 1920, the market was inactive and the partnership of Frazier & Hunt made no sales. It does not appear that there was any decrease in the cost of producing staves as of December 31, 1920, from the cost during the earlier portion of the year.

6. On September 14, 1925, plaintiff filed with the collector of internal revenue a claim for refund of income taxes for the year 1920, upon the ground that the partnership of Frazier & Hunt had overstated the amount of its closing inventory as of December 31, 1920, and this claim was rejected by the Commissioner of Internal Revenue on August 6, 1926.

7. Rough unsawn staves were cut at the mills owned by Frazier & Hunt and hauled by wagon and team from 10 to 12 miles to the railroad stations over rough mountainous roads, which were practically impassable during the winter and bad weather. The cost of hauling was $1.40 per hundred; culling, $1.-50 per thousand; and loading, $1 a thousand. Few staves were hauled during the late fall of 1920 and early winter of 1921 because of weather conditions.

After staves were sawed at the mill, they were stacked for about 90 days until seasoned, and then hauled to the station.

Practically all the staves which were included in the inventory of Frazier & Hunt were at the mills, some 10 or 12 miles from railroad stations, on December 31, 1920.

8. The market value of the staves similar to those manufactured by Frazier & Hunt on December 31, 1920, f. o. b. cars at the railroad station, was $32.40 per thousand. The market value of the 1,081,520 staves owned by Frazier & Hunt on December 31, 1920, at the mills was $15.90 per thousand.

9. The income tax returns were prepared by an auditor employed by Frazier & Hunt, who reported therein 1,081,520 staves, at their value in cars at the railroad station, this being their value as shown by an inventory furnished him by plaintiff, whereas all save a negligible number were at the mills.

The inventory of staves made by Frazier & Hunt showed 1,081,520 staves on hand December 31, 1920. The inventory was prepared at the office of Frazier & Hunt at Nashville, Tenn., from reports made to that office by plaintiff showing the number of staves produced and the expense of production. It does not appear that the basic elements of cost of staves, i. e., materials, labor, and burden, were lower on December 31, 1920, than at other periods during the year.

William J. Byrne, of Washington, D. C. (J. C. Trimble, of Washington, D. C., on the brief) for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff, John B. Hunt, was an equal partner with G. I. Frazier, and was engaged in manufacturing pieces of timber into barrel staves. The copartnership operated a number of mills located at various points in Tennessee, some ten or twelve miles from railroad stations. The main office of the firm was in Nashville, Tenn.

Plaintiff filed his individual income tax return on March 13, 1921, for the calendar year 1920. This return disclosed a net income of $40,968.63 and an income tax due thereon of $6,525.51, which was duly paid in installments. In October, 1924, the Commissioner of Internal Revenue assessed an additional tax against the plaintiff of $54, which was also duly paid.

Plaintiff's return of individual income for the calendar year 1920 included an item of $37,825.38, his distributive share of income from the partnership of Frazier & Hunt, and the additional tax of $54 assessed by the commissioner in October, 1924, was arrived at by increasing plaintiff's distributive share, as above mentioned, from $37,825.38 to $38,025.-38.

In computing the net income of the co-partnership of Frazier & Hunt, the closing inventory for the calendar year 1920 disclosed as of December 31, 1920, the possession of 1,081,520 pieces of staves on hand at the mills, valued at $40 per thousand, a total value of $43,260.80. This inventory was prepared for the firm by accountants in Nashville, Tenn., upon information furnished by the firm, and value was ascribed thereto upon the basis of either market f. o. b. cars, or cost thereof.

Plaintiff now asserts that the inventory involved should have been at the market value of the pieces of staves at the mills, i. e., $15.90 per thousand instead of $40, and, if so valued, would result in a diminution of his tax liability for the calendar year 1920 to the extent of $2,925.21, for which amount a judgment is sought, with interest on $1,239.84 from September 15, 1921; on $1,631.37 from December 15, 1921; and on $54 from November 10, 1924.

Plaintiff states that the single issue for adjudication is, "What was the market value per thousand of the partnership's staves on hand December 31, 1920," and to sustain the contention cites article 1584 of Treasury Department Regulations 45, which is as follows:

"Art. 1584. *Inventories at Market.*—Under ordinary circumstances, and for normal goods in an inventory, 'Market' means the current bid price prevailing at the date of the inventory for the particular merchandise in the volume in which usually purchased by the taxpayer, and is applicable in the cases (a) of goods purchased and on hand, and (b) of basic elements of cost (materials, labor and burden) in goods in process of manufacture and in finished goods on hand. * * * Where no open market exists or where quotations are nominal due to stagnant market conditions, the taxpayer must use such evidence of a fair market price at the date or dates nearest the inventory as may be available, such as specific purchases or sales by the tax-

payer or others in reasonable volume and made in good faith, or compensation paid for cancellation of contracts for purchase commitments. Where the taxpayer in the regular course of business has offered for sale such merchandise at prices lower than the current price as above defined, the inventory may be valued at such prices less proper allowance for selling expense, and the correctness of such prices will be determined by reference to the actual sales of the taxpayer for a reasonable period before and after the date of the inventory. Prices which vary materially from the actual prices so ascertained will not be accepted as reflecting the market. * * *"

The record conclusively establishes that the return of the copartnership of Frazier & Hunt discloses a partnership income of $76,-577.51 for the calendar year 1920, computed in part upon a closing inventory for the year, valued as to the item involved at $43,260.80, and that plaintiff's one-half share thereof is correct unless the closing inventory as to staves may be computed upon the market value thereof prevailing at the mills on the date the same was taken, leaving, as plaintiff states, the single issue as to whether article 1584 of Regulations 45 entitles plaintiff to value the item of staves at the market price thereof at the mills instead of f. o. b. the cars. No jurisdictional issue is involved in the case. Plaintiff's refund claim was filed in time, and the suit is properly before the court.

Plaintiff concedes that the copartnership of Frazier & Hunt was a manufacturing one, that the pieces of staves manufactured, in so far as the firm is concerned, were finished products, and this concession in our opinion brings again before the court the question whether the closing inventory of December 31, 1920, is to be valued under "(a)," i. e., "of goods purchased and on hand" or "(b)" "of basic elements of cost (materials, labor and burden) in goods in process of manufacture and in finished goods on hand," of article 1584, Regulations 45, above quoted.

The record furnishes no proof by which the inventory may be valued under "b" above. Valuation of the same was predicated either upon cost or market value of the finished product, when it should have been valued, as the regulations prescribe, under "b" of article 1584.

The court in a recent opinion in the case of Bedford Mills, Incorporated, v. United States, 59 F.(2d) 263, decided June 6, 1932, in discussing this precise issue, said: "To sustain the last contention of the plaintiff would, we think, exact of the court an opinion as to reasonableness and lawfulness of the regulations under which the plaintiff's tax liability is to be determined. This issue we regard as no longer res integra. The use of inventories in ascertaining correct income, the circumstances under which they must be used, the manner of their taking, and the basis of valuation thereof, together with the numerous other details concerned in their preparation, are provided for by the commissioner in extensive, plain, and lengthy regulations, and the courts have uniformly sustained the regulations. It is, we think, too late to indulge another academic discussion as to whether they conform 'to the best accounting practice in the trade or business and as most clearly reflecting the income.' Riverside Mfg. Co. v. United States, 67 Ct. Cl. 117; Chicago Frog & Switch Co. v. United States, 67 Ct. Cl. 662; United States v. Kemp (C. C. A.) 12 F.(2d) 7; Lucas v. Kansas City Structural Steel Co., 281 U. S. 264, 50 S. Ct. 263, 74 L. Ed. 848."

This case, we think, falls within the principles of the Bedford Case, and the authorities therein cited, and the petition will be dismissed. It is so ordered.