FOREST GLEN CREAMERY COMPANY, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51833, 64637–64639, 64653–64655.

Promulgated January 16, 1940.

*George J. Dreiske, Esq.*, for the petitioners.
*Harold D. Thomas, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Claus Junge; Thomas J. Riley; I. T. Czajke; E. W. Iwicki; George L. Meyer; and Peter J. Wilson.

OPINION.

HILL: The Board held in an opinion appearing at 33 B. T. A. 564, that it was without jurisdiction in this case to redetermine the tax liability of the Forest Glen Creamery Co., hereinafter sometimes referred to as the corporation, for the calendar year 1927, since the deficiency notice stated that in accordance with section 279 (a), Revenue Act of 1926, respondent had assessed against the corporation an income tax for the "period ended June 30, 1927." The United States Circuit Court of Appeals reversed the Board's decision and remanded the cause for a hearing on the merits, holding that respondent in fact determined the controverted deficiency for the calendar year 1927, and that the Board had jurisdiction to redetermine the tax liability for that year. See 98 Fed. (2d) 968. The court's decree is now the law of the case, and we are bound thereby. *In re Sanford Fork & Tool Co.*, 160 U. S. 247, 255; *Peavy-Byrnes Lumber Co.*, 31 B. T. A. 985; affd., 86 Fed. (2d) 234; certiorari denied, 300 U. S.

674. Our further discussion herein will, therefore, proceed on the premise that the deficiency involved is for the calendar year 1927.

The individual petitioners herein, who are charged with liability as transferees of the corporation's assets, have alleged in their pleadings, (1) that limitations had run prior to mailing of the notices to petitioners; (2) that petitioners are not liable as transferees; and (3) that there is no deficiency in the tax liability of the alleged transferor corporation.

The issues arising out of allegations (1) and (2) apparently have been abandoned by petitioners, but, if not, they must be decided adversely to their contentions. Assessment of transferee liability was not barred by limitations when the notices were mailed to petitioners on February 17, 1932. The corporate taxpayer filed its return on March 10, 1928; hence the period of limitations for assessment against it did not expire prior to March 1931 (section 277 (a) (1), Revenue Act of 1926), and the period for assessment of transferee liability provided in section 280 (b) (1) did not expire until March 1932.

Likewise, it seems clear that petitioners are liable as transferees for whatever tax, if any, is due from the corporation, since respondent now concedes that the deficiency is less than $22,312.40, and the parties have stipulated that each of the individual petitioners herein received proceeds of sale of the corporation's assets in excess of that amount, if it should be held that the corporation sold its assets. Thus, the sole issue for decision here is whether or not the transaction consummated in 1927, under the facts and circumstances set out in our findings of fact above, constituted a sale by the corporation of its business and assets, or a sale by the stockholders of their shares of stock in the corporation.

Petitioners contend that respondent's determination of the deficiency in controversy was based solely upon a revenue agent's report, in which it was held that the transaction involved was a sale of assets by the corporation and not a sale of stock by the stockholders; that the revenue agent's conclusion was arbitrary and erroneous because it was based upon his construction of the contract of May 24, 1927, which it is alleged was not carried out but was superseded by a new agreement dated July 20, 1927, called the escrow agreement, under which latter agreement petitioners say they sold their shares of stock and received the consideration paid therefor. Petitioners argue that, since the revenue agent construed the wrong contract, respondent's determination predicated thereon is so obviously arbitrary and without foundation that it must be disapproved, citing in support thereof *Bruce & Human Drug Co.*, 1 B. T. A. 342; *Acorn Refining Co.*, 2 B. T. A. 253; *Index Notion Co.*, 3 B. T. A. 90; *Helvering* v. *Taylor*, 293 U. S. 507.

The Supreme Court in its opinion in the *Taylor* case stated that "The fact that the Commissioner's determination of a deficiency was arbitrarily made may reasonably be deemed sufficient to require the Board to set it aside", citing the three decisions of the Board above mentioned. However, in the *Taylor* case, the evidence affirmatively disclosed that the Commissioner's determination was arbitrary and excessive, and the Court therefore held it invalid, saying that the taxpayer should not be bound to pay a tax that confessedly he did not owe because his evidence was not sufficient also to establish the correct amount that lawfully might be charged against him. The doctrine applied in that case, as well as in the cited decisions of the Board, has no application here, because petitioners have not shown that respondent's determination in the instant case is without rational foundation or excessive.

The burden of proof in the first instance is upon the taxpayer to show that the Commissioner's determination is invalid. *Helvering* v. *Taylor, supra; Lucas* v. *Kansas City Structural Steel Co.*, 281 U. S. 264, 271; *Wickwire* v. *Reinecke*, 275 U. S. 101, 105.

Petitioners here have not discharged their burden merely by showing that the revenue agent construed the wrong contract, if indeed such was the case. It might well be that the subject matter of the first contract dated May 24, 1927, was the same as in the latter agreement dated July 20, 1927. If both instruments were in fact contracts by the corporation to sell its business and assets rather than agreements by the stockholders to sell their stock, then the conclusion reached by respondent is correct, and it is immaterial that it was based solely upon a construction of the earlier contract. If the record before us establishes that the deficiency determined by respondent is correct, it is our duty to approve it even though his reasoning is not sound or based upon the correct principle. *American Bond & Mortgage Co.*, 15 B. T. A. 264, 272.

The ultimate issue for decision here is whether or not the deficiency asserted by respondent is lawfully due from the Creamery Corporation; and the primary question, the answer to which disposes of the former, is whether that corporation sold its assets or the stockholders sold their stock.

In order to determine the intention of the contracting parties in so far as it affects the question presented here, we think we may properly look to the terms of both agreements, as well as the attendant circumstances, so far as disclosed. While it may be true that, technically at least, the escrow agreement of July 20 was a new contract, superseding the instrument dated May 24, yet the two contracts must be construed together for the reason that a copy of the earlier contract was annexed to and made a part of the escrow agreement. How-

ever, so far as concerns the subject matter of the two agreements, that is to say, the thing agreed to be sold by the one party and purchased by the other, we find no conflict in the provisions of the two instruments. The escrow agreement, broadly speaking, merely amended and supplemented the provisions of the first contract; the essential nature of the agreement, the thing sold, and the consideration agreed to be paid therefor, remain unchanged.

From a careful consideration of the terms of the contracts themselves, we think it is clear that it was the intention of the Creamery Corporation to sell its business and assets for the consideration stated, and that there was no sale intended to be made by the stockholders of their shares of stock, nor was any such sale in fact consummated. The nature of the transaction is not altered by the fact that the stockholders of the corporation, for reasons satisfactory to themselves, provided in the agreements for the proceeds of sale to be distributed directly to them instead of causing the consideration to be paid to the Creamery Corporation and by it distributed to them in liquidation. This merely constituted a cutting of corners, and was probably occasioned by the desire of the purchaser to acquire full and unrestricted control of the selling corporation prior to or at least at the time of the payment of the consideration for the transfer of the business and assets.

The terms of the instruments, we think, are not fairly susceptible of any other construction, and in the light of the plain and unambiguous language used can not be held to constitute agreements for the sale and purchase of stock. The contract of May 24, 1927, recited that the Forest Glen Creamery Co. was the owner of an extensive creamery and milk business, which the other party desired to purchase and take over in its entirety, including all of its real estate, goods, chattels, property, and equipment. Thus, the original intention of the parties was to effect a sale and purchase of the business and assets rather than of shares of stock, the transfer of which by the stockholders appears to have been only incidental to the sale by the corporation of its assets.

We find nothing in the record to indicate that the purchaser desired primarily to acquire control of the Creamery Corporation through purchase of its stock instead of a direct acquisition of its business and assets. The purchaser apparently took over the stock in order to insure that, through dissolution of the Creamery Corporation, the purchaser would derive the full benefit of its good will. At any rate, the shares of stock were worthless at the time of actual transfer, since the Creamery Corporation then had no assets, and it was never thereafter used by the purchaser to carry on any business operations; its charter was permitted to be forfeited in the following year for nonpayment of state franchise tax.

That the payment directly to the stockholders of the proceeds of sale of the Creamery Corporation's assets constituted a liquidating distribution is indicated by the resolution adopted at a meeting of the stockholders on July 22, 1927, ratifying the contract of May 24, as modified by the supplemental agreement of July 12, in which resolution the stockholders specifically agreed to look solely to the purchase price for their distributive shares in payment of the surrender of all the capital stock of the corporation.

For the reasons indicated, we hold that the transaction in controversy constituted a sale by the Forest Glen Creamery Co. of its business and assets, and not a sale by the stockholders of their shares of stock. The amount of the deficiency due from the taxpayer corporation will be recomputed in accordance with the stipulation of the parties that the taxable net income as determined by respondent should be decreased in the sum of $30,000. We further hold that each of the individual petitioners herein is liable for such deficiency, so redetermined, as a transferee of the assets of the taxpayer corporation.

*Decisions will be entered under Rule 50.*