**MOHAWK LIQUEUR CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 16382.**

United States District Court
E. D. Michigan, S. D.

Dec. 28, 1961.

Fred R. Walker, Detroit, Mich., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., James P. Garland, Lyle M. Turner, Benjamin H. Pester, Attys., Dept. of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Detroit, Mich., for defendant.

LEVIN, Chief Judge.

Mohawk Liqueur Corporation, herein referred to as taxpayer, paid certain assessed income and excess profits tax deficiencies and now sues for a refund. The facts have been stipulated. Taxpayer manufactures and sells various liqueurs, wines, and distilled liquors and thus was liable for, and paid, certain federal taxes (floor stocks taxes) on its stocks of distilled spirits. The issue which is now before the court is whether the cost originally assigned to the basic "last-in, first-out" (LIFO) inventory should be adjusted for the floor stocks taxes subsequently levied, as the Government contends, or whether the taxes should be considered current expenses of the years in which they were assessed and paid, the view contended for by the taxpayer.

A necessary step in the calculation of taxable income for any period is the determination of the "cost" of the closing inventory. LIFO assumes that the articles sold during the taxable year were those most recently purchased so that

those remaining in inventory are assumed to be the first items purchased. Thus, the "cost" of the closing inventory is ordinarily determined by the cost of acquisition of the first items purchased. The object of the LIFO fiction is to match current expenses more closely to current income, since the cost of the last item of inventory is usually closer to the replacement cost of the item than is the price of the first bought. In theory, this method makes the income statement of a going concern more accurate although it results, in time of rising prices, in an increasingly undervalued inventory.

Taxpayer elected the LIFO method of inventorying its distilled spirits and finished products on October 1, 1942, as allowed by Section 22(d) of the Internal Revenue Code of 1939,[1] (re-enacted without important changes as Section 472, Internal Revenue Code of 1954, 26 U.S.C. § 472). Taxpayer subsequently filed its returns on that basis. The validity of its election is not disputed.

In its first LIFO opening inventory, taken as of October 1, 1942, taxpayer included the $4 per gallon excise tax[2] which it had previously paid as part of the cost of the spirits in its inventory. Effective November 1, 1942, Congress increased this tax to $6 per gallon.[3] As the excise tax attached to the spirits only on distillation or removal from bond, this change did not affect taxpayer's basic LIFO inventory, which consisted only of spirits already distilled or removed from bond, and hence, is not in issue. However, Congress, in the same act, effective November 1, 1942, enacted a floor stocks tax of $2 per gallon payable on all distilled spirits held for use in manufacturing or for sale on which the previous $4 per gallon excise tax had been paid.[4] In 1944, the excise tax was raised to $9 per gallon,[5] and a $3 per gallon floor stocks tax was enacted.[6] In 1951, the excise tax was raised to $10.50 per gallon,[7] and a $1.50 per gallon floor stocks tax was enacted.[8]

Thus, the spirits, which, under LIFO theory were assumed to have been continuously in the taxpayer's inventory, were subject to four separate excise taxes. The first was the $4 per gallon excise tax which had attached before taxpayer changed to LIFO. The second tax was the $2 per gallon floor stocks tax which attached to them on November 1, 1942. The third was the $3 per gallon floor stocks tax which attached on March 1, 1944. The fourth was the $1.50 per gallon floor stocks tax which attached November 1, 1951. Each of those four taxes was paid by the taxpayer. The Government does not dispute the correct-

1. Section 22(d) (1). "A taxpayer may use the following method (whether or not such method has been prescribed under subsection (c)) in inventorying goods specified in the application required under paragraph (2):
   "(A) Inventory them at cost;
   "(B) Treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year (in the order of acquisition) to the extent thereof, and second, those acquired in the taxable year; and
   "(C) Treat those included in the opening inventory of the taxable year in which such method is first used as having been acquired at the same time and determine their cost by the average cost method.
   *     *     *     *     *
   (3) The change to, and the use of, such method shall be in accordance with such regulations as the Commissioner, with the approval of the Secretary, may prescribe as necessary in order that the use of such method may clearly reflect income."

2. Revenue Act of 1941, Sec. 533, 55 Stat. 708, amending Internal Revenue Code of 1939, Sec. 2800(a) (now 26 U.S.C. § 5001 (a)).

3. Revenue Act of 1942, Sec. 602(a), 56 Stat. 970.

4. Internal Revenue Code of 1939, Sec. 2800(j).

5. Revenue Act of 1943, Sec. 302(a), 58 Stat. 61 (1944).

6. Internal Revenue Code of 1939, Sec. 2800(k).

7. Revenue Act of 1951, Sec. 451(a), 65 Stat. 524.

8. Internal Revenue Code of 1939, Sec. 2800(l).

ness of taxpayer's treatment of the original $4 per gallon tax as part of the cost of the LIFO opening inventory. The issue thus narrows to the question of the proper treatment of the three floor stocks taxes.

While Section 22(d) is by no means crystal clear, a careful reading of its language and of the pertinent treasury regulations supports the taxpayer's position. Section 22(d) requires the goods to be inventoried at "cost" and requires that the taxpayer "treat those remaining on hand at the close of the taxable year as being: First, those included in the opening inventory of the taxable year * * *." "Cost" is defined in Treasury Regulations 111 § 29.22(c)–3 as follows: "Cost means: (1) In the case of merchandise on hand at the beginning of the taxable year, the inventory price of such goods." Hence, the "cost" of "those included in the opening inventory" is taken as the "inventory price." This, in turn, could only be the "price" assigned to the goods for the preceding closing inventory, which was, in turn, calculated in the same way. This successive reference back is the heart of the LIFO method. Since "cost" for each year is the same as "inventory price," which, in turn, is merely "cost" from the preceding year, it necessarily implies that "cost" (for goods considered as continuously in inventory) is constant once the goods have entered the inventory. We thus find the price of the goods to be the price assigned to them as cost of acquisition at the time acquired, or the time when LIFO was first instituted. Hence, "cost" could not include the subsequently enacted floor stocks taxes.

The legislative history of Section 22(d), although meager, supports this interpretation. The first version of this section, which appeared as a Senate floor amendment to the Revenue Act of 1938, used the words "last-in, first-out." It applied to most taxpayers with fungible inventories and read as follows:

"The cost of goods sold during any taxable year beginning after December 31, 1938, may be computed on the last-in, first-out basis if such basis conforms as nearly as may be to the best accounting practice in the trade or business, * * *" 83 Cong.Rec. 5042.

The only discussion of the amendment was by its supporters, who indicated that they had in mind authorizing the usual and ordinary LIFO method, involving items whose cost would be taken as fixed once they were placed in inventory. 83 Cong.Rec. 5042ff.

When the amendment came out of conference, it no longer contained the words "last-in, first-out," and it was limited to certain industries. It prescribed the method of taking inventory in terms similar to those in the present law. The managers in conference on the part of the Senate indicated that, except for the limited scope of application, the intent of the conferees was to enact the Senate floor amendment. 83 Cong.Rec. 6440ff.

The Revenue Act of 1939 made the LIFO section applicable to all taxpayers with fungible inventories and phrased it in virtually its present form. The committee report accompanying the bill explained that the only purpose of the changes was to make the optional method applicable to more taxpayers. S.Rep. No. 648, 76th Cong., 1st Sess.

This legislative history indicates that Congress intended to allow those taxpayers who could qualify under Section 22(d) to use the LIFO method of inventory evaluation. It also seems clear that Congress assumed that the "cost" of a particular item in inventory, once determined as of some date (usually the date of acquisition), does not change.

The Government's position in this case thus appears to be in conflict with the congressional intent in that the effect of the Government's method would be to require the taxpayer to abandon LIFO accounting as to the floor stocks taxes. The object of LIFO is to allow rising costs of doing business to be set against current income rather than be applied to inventory and recovered at a future time. Yet, as to the increased inventory

replacement cost represented by the floor stocks taxes, the Government urges that these be added to inventory valuation to be recovered at some time in the future when these items, assumed to be the last sold, are disposed of. This would have the effect of deferring the recovery of these particular costs until taxpayer's inventory is finally liquidated, a result quite the opposite of that intended when Congress permitted the use of LIFO in inventory valuation.

The taxpayer's position here is also well supported by established accounting theory and practice. See Wixon, Accountant's Handbook, § 12 (4th ed. 1957). In defining the "cost" of a LIFO inventory, the one time (per item) expenses involved in the acquisition of goods are properly allocable to the cost of the goods. On the other hand, the typical recurring expenses of inventory maintenance, such as state and municipal personal property taxes, insurance, and warehousing, are unquestionably chargeable to the day-to-day expenses of running the business. The floor stocks taxes here in question are akin to these expenses of maintaining an inventory, in that they are merely a cost necessary to its continued existence.

There remain two points urged by the Government which need a word of discussion. The first is that the Commissioner's action in assessing the deficiency was within Section 22(d) (3), as a regulation to insure that the plaintiff's return "clearly reflects income." However, the Commissioner has issued no regulation which supports the Government's position in this action. The only regulations pertinent to the case merely restate the Senate Finance Committee's explanation of the section. In fact, the regulations tend to support the plaintiff's position, as they, too, are written with the implicit assumption that historic cost, once established in accordance with the statute, does not change. Treas.Reg. 111, § 29.22 (d).

In any event, if, as legislative history and the wording of the statute indicate, Congress intended to allow the use of LIFO, then it would seem to be beyond the authority of the Commissioner to issue a regulation requiring a taxpayer who has properly elected LIFO to use instead a system that is LIFO only in part and defers recovery of those expenditures which the Commissioner deems appropriate to so require.

The Government also directs my attention to the case of Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848 (1930), in which the Supreme Court upheld the Commissioner's action in ruling the "base stock" system of inventory evaluation invalid as not clearly reflecting income. That case would indeed be apposite if Congress had not, in the meantime, passed the LIFO provision of the Internal Revenue Code. To the extent that that case is authority for denying to taxpayers the use of LIFO, it has obviously been overruled by Congress, as regards taxpayers who come within the scope of Section 22(d).

The floor stocks taxes are excludable from the cost of the LIFO inventory. Judgment for the plaintiff may be entered.

