GeeeN, Judge,
delivered the opinion of the court:
This case raises a question as to the proper manner of making inventories for tax purposes in the year 1917. The plaintiff filed its tax return for that year and after examination by the Bureau of Internal Revenue the net income of plaintiff as returned was increased $31,785.17 as the result of an adjustment of the inventory of rails on hand December 31, 1917. The plaintiff, which kept its books on an accrual basis and used inventories to determine its net income, inventoried the rails on hand at a so-called base or standard price, which was the price at the beginning of the year, and it is not claimed that this price was either cost or market for the rails which were on hand December 31, 1917. The Commissioner of Internal Revenue, in adjusting the inventories, valued the rails on hand at the prevailing market price on December 31, 1917, which resulted in an increase in the inventory as stated above and an increase in plaintiff’s taxes for the year 1917. Plaintiff paid the taxes so assessed and filed an application for a refund thereof and in this action asks judgment for the alleged overpayment and interest thereon. The plaintiff in taking its inventory used a fixed price, the same at the close of the year as at the beginning of the year. The price used at the beginning of the year was the cost price at that time and was also taken by the defendant in computing the amount of the inventory at that date.
The plaintiff had adopted this method of taking inventories in pursuance of a practice established several years before, its object being to avoid taking credit on its books for profits which might not be realized owing to the fact that it was compelled to keep a substantial amount of rails on hand at all times.
*193 The statutes pertaining to the return of income and profits taxes for 1917 did not prescribe the manner in which inventories should be made. A Treasury Decision of December 19, 1917, promulgated by the commissioner, held that such inventories should be made at cost, or cost or market, whichever was lower, and had the force and effect of a regulation. If this decision was made in accordance with the law, and in establishing this regulation the commissioner was acting within his authority, the acts of the commissioner involved in this case must be approved. The plaintiff, however, contends that the commissioner had no authority in law to make any regulation with reference to inventories, and as the statute laid down no definite rule, it had the right to establish one for itself, provided the method used clearly reflected its income for the year 1917 and was in accordance with good accounting and sound financial management. The plaintiff also contends that it had consistently followed this method since 1912 and that during a period of years it would give proper results. It becomes necessary to determine whether this argument is well founded.
Section 1005, under Title X, Administrative Provisions, of the revenue act of 1917 provides:
“ That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, is hereby authorized to make all needful rules and regulations for the enforcement of the provisions of this act.”
In ascertaining the income of concerns conducting a business such as that of plaintiff that requires large stocks to> be carried, it was absolutely necessary to have inventories made, and the provisions of the act could not be enforced without them. There is no merit in the contention that the commissioner did not have authority to make a regulation requiring inventories. The only question is whether the regulation was appropriate, which, in our opinion, depends upon whether the method prescribed by it would clearly reflect the income. On the other hand, if the method taken by plaintiff clearly reflected the income and was in accordance with good accounting, we do not think any regulation made by the commissioner would make it invalid.
*194 There is nothing in the evidence to show that the method adopted by plaintiff clearly reflected its income for the year in question or that it was in accordance with good accounting. It may have been sound financial management, as it was quite conservative in its credits. Sound management is probably always conservative, but questions of management and questions of taxation should not be confused. The burden was upon the plaintiff to show that the method prescribed by the Treasury Decision did not correctly reflect the income and was not in accordance with good accounting. Not only is there nothing in the evidence to show that the method used by the bureau was not a proper one, but there is some evidence to indicate that it was proper. We arrive at this conclusion from an examination of the revenue act of 1918, 40 Stat. 1057, and the regulations established thereunder, which, we think, although enacted after the time when the taxes in the case at bar accrued, is some evidence of what the proper rule should be. Section 203 of the act of 1918 reads as follows:
_ “ Seo. 203. That whenever in the opinion of the commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.”
We held in the case of Riverside Mfg. Co. v. United States, No. F-324, decided February 4, 1929 [67 C. Cls. 117], that the 1918 statute gave the commissioner authority to make this regulation. The Treasury decision of 1917 was to the same effect as the regulation, but as there was no express authority for it, it becomes necessary to determine whether the decision promulgated a reasonable rule.
This rule has been applied in cases so numerous that the number can not be estimated. In none of them, so far as we are aware, has there been any exception taken on the ground that it was arbitrary or that it did not conform to the best accounting practice or clearly reflect the income. On the contrary, it seems to have been approved by the au *195 thors of works on income-tax practice and authorities on accounting. The only decision to which our attention has-been called is that of United States v. Kemp, 12 Fed. (2d) 7, in which it was held that the regulations promulgated by the commissioner were reasonable and fair and within his authority to make. With this statement we agree, even as applied to conditions in 1917, when there was no specific statute on the subject but merely the general statute with reference to regulations which we have quoted.
It should be observed also that while the practice of plaintiff with reference to making its inventories would probably give a fair average of its income through a number of years, there is nothing in the law that justifies such a practice. The law contemplates that each year should be taken by itself. The method adopted by the plaintiff would have the practical effect of carrying the losses of one year over into the succeeding years and with one exception not necessary to specify here the law does not permit this to be done. On the contrary, as we think, the law contemplates that income and profits taxes should be returned on an annual basis. No doubt there are many people who would like to have both gains and losses spread over a number of years as it would greatly reduce their taxes, but the law does not authorize this practice.
Besides this, the figure taken by the plaintiff as a basic price for its inventories is, so far as appears from the evidence, an entirely arbitrary one. There is nothing in the evidence to show why some larger or smaller figure might not just as well have been taken. We think it quite clear that the plaintiff can not take a basic price that suits its convenience in the management of its business regardless of whether this correctly reflects annual profits or losses.
The fact that plaintiff had for a number of years been following an erroneous practice in making up its inventories for income-tax purposes is no justification. Our attention has been called to some decisions by the Board of Tax Appeals which, it is claimed, hold that where a consistent practice has been followed for years in making up inventories that method will be preferred. An examination in full of the decisions in these cases will maké it evident that no such *196 general rule is laid ‘down, although it may have been applied in some particular cases because in those instances it did not have the effect of distorting the income. The basic principle of these cases is that the commissioner could not take one method in making up the inventory for the beginning of the year and another method for the inventory at the close of the year, as this would have the effect of distorting the income. See Appeal of Boyne City Lumber Co., 7 B. T. A. 36, 58; Appeal of Sinsheimer Bros., Inc., 5 B. T. A. 918. These decisions, however, apply to the alternative claim made by the plaintiff, which will nest be discussed.
Another and more difficult question remains in the case. The plaintiff insists that even if defendant’s theory as to the law in the case is correct, it has not been properly applied by the commissioner to the facts in .the case. The record shows that at the close of 1917 there were 6,475,609 pounds of open-hearth rails on hand and that not more than 3,873,350 pounds cost $40.00 per gross ton, and at least 2,602.259 pounds cost only $30.00 per gross ton. As previously stated, the market price at the close of 1917 was $40.00 per gross ton. Even if we assume that the presumption is that the rails first bought would be first used, there was on hand at the close of the year at least the last-named amount of open-hearth rails which had cost only $30.00 a ton. It is plain that if the plaintiff had in the first instance exercised its right to make its inventory for the close of 1917 on cost prices whicfi were lower than the market price, a considerable reduction would have been made in the tax assessed.
Upon the facts above stated the plaintiff makes an alternative claim. In event this court refuses to apply the principle of law involved in its claim for refund and holds that its inventories were improperly made, it asks that its inventory for the close of 1917 be made up on the basis of cost so far as shown by the evidence. The argument for defendant is in substance that the plaintiff having failed to make up its inventories in the manner lawfully required by the Treasury Decision and having filed its claim for a refund on a different basis, the commissioner was authorized to determine the manner of making the inventories. To this *197 the plaintiff answers that the commissioner did not follow the rule and regulation contained in the Treasury Decision and which had been promulgated by the bureau, and we think that if the plaintiff’s contention on this point is correct the computation made by the commissioner must be revised.
It may be that when the taxpayer has not made up its inventories in accordance with the law and the regulations, after the commissioner has applied a method which does conform thereto, plaintiff can not object on the ground that it originally had the right to take some method more favorable to itself, but we do not find it necessary to decide this question. The Treasury Decision, which, as we have already said, had the force and effect of a regulation, provided that inventories should be taken on the basis of cost, or cost or market, whichever was lower. The meaning is not entirely clear, but we think it was intended that if cost was taken for the beginning of the year it should be taken also for the close and vice versa. Any other method through a series of years would produce most inconsistent results, for what would produce a loss one year might produce a gain another if a different method was taken. But we do not find it necessary to decide whether when cost is taken as the basis of the inventory for the beginning of the year it must also be taken as the basis at the end of the year. The Treasury Decision held that the inventory should be taken on the basis of cost or market, whichever was lower. In the instant case at the close of the year the cost was lower, and we think the plaintiff is entitled to have the regulation applied; in other words, that the bureau should conform to its own regulations, provided of course they were in accordance with the law.
If it be argued that its claim for refund was made on a different basis, the answer is that the difference was only in the method of calculating or computing the proper inventory.' In its claim for refund plaintiff stated in substance that the inventories had not been properly adjusted and that the revenue agent erroneously added to the company’s net income a certain sum representing adjustment of the inventory on open-hearth rails.' Plaintiff claimed too much. But is this any reason why it should not now have the proper *198 amount, which was less? We think not. It appears to us there is no more reason why it may not be permitted to correct an error of this kind than a mathematical error as to which there would be no question.
It follows from what has been said above that the plaintiff is entitled to have its closing inventory for 1917 recomputed on the basis of cost so far as shown by the evidence.
Correcting the inventory to conform to actual costs, as stated in Finding VII, and making the other corrections in the computation of the tax made necessary by this change, we find that the tax was overpaid in the amount of $3,825.39 and that there was also an overpayment of interest of $379.75, making a total overpayment at the last date of $4,205.14, which, with interest from March 30, 1925, as provided by law, the plaintiff is entitled to recover. Judgment will be entered accordingly.
SiNNOtt, Judge, and Booth, Chief Justice, concur.
GRAham, Judge, took no part in the decision of this case; and Moss, Judge, took no part, because of illness.