## MARSHALL-WELLS CO. v. UNITED STATES.

### No. H-513.

Court of Claims.
May 31, 1932.

Plaintiff sues to recover $456,896.67, with interest, representing an alleged overpayment of income and profits tax for the calendar year 1917. It contends, first, that the total amount sued for was collected after the expiration of the statutory period of limitation within which collection could legally be made, and that such collection was not made legal by section 611 of the Revenue Act of 1928 (26 USCA § 2611), for the reason that the collector's claim in abatement, rather than the claim in abatement filed by plaintiff, stayed the collection; secondly, that, in any event, $24,475.35 of the total amount sued for was an overpayment under section 607 of the Revenue Act of 1928 (26 USCA § 2607), inasmuch as no claim in abatement was filed specifically against this amount; and, thirdly, that, if the amount sued for is not refundable on the ground that it was collected after the expiration of the statute of limitation, the amount of $432,421.32 of the alleged total overpayment was illegally collected as a result of erroneous inventory adjustments.

The defendant insists that collection of the entire amount sued for was stayed by a claim in abatement filed by the plaintiff, and that the plaintiff is therefore precluded by section 611 of the Revenue Act of 1928 from recovering any portion thereof on the ground that the amount was collected out of time. The defendant further insists that the inventory adjustments made by the plaintiff on its amended return for 1917, which were approved by the Commissioner, were correct, and that the plaintiff is therefore not entitled to recover on this ground.

Special findings of fact:

1. Plaintiff is a New Jersey corporation engaged in business as a wholesaler, manufacturer, importer, and exporter of merchandise, with principal office and place of business at Duluth, Minn.

2. During 1917 it carried in its inventory from 45,000 to 60,000 items of merchandise. The principal items carried in 1917 were builders' hardware, electrical supplies, mechanics' tools, shelf and heavy hardware, iron, steel, and pipe, housefurnishing goods, stoves, furnaces, boilers, mining and railway supplies, mill and logging supplies, cutlery, novelties, etc., sporting goods, bicycle goods, automobile supplies, paints, varnishes, paint brushes, glass, chandlers' hardware, heating, ventilating, plumbing, and water supplies. It also manufactured harness, collars, saddles, tents, blankets, etc. The greater portion of plaintiff's merchandise was nonperishable; the perishable goods in the inventory being less than 2 per cent. of the entire amount thereof. The average stock was only sufficient for about four months' business.

3. April 1, 1918, plaintiff duly filed its original corporation income and excess profits tax returns for the calendar year 1917. These returns were not false or fraudulent with intent to evade the tax, but were erroneous in so far as they stated that the inventories at the beginning and the end of the year were taken at cost.

On the original returns plaintiff showed a net income of $1,965,680.15, an income tax of $96,109.06, and an excess profits tax of $357,255.13, or a total tax of $453,364.19. This amount of tax was assessed and paid to the collector at St. Paul, Minn., during 1918, and no portion of that amount is involved in this suit.

4. In the latter part of October or the first of November, 1919, the Commissioner of Internal Revenue made a certain ruling and decision, known as T. B. R. 65, which he caused to be published in Cumulative Bulletin No. 1, page 51, in which ruling he held and decided that the "base stock" method of inventorying merchandise was not in compliance with the regulations of the Bureau of Internal Revenue or the Revenue Act of 1916, as amended by the Revenue Act of 1917. The contents of this decision and ruling of the Commissioner came to the attention of the plaintiff's officers and, on January 20, 1922, the plaintiff voluntarily prepared and filed amended income and excess profits tax returns for 1909 to 1919, inclusive, making inventory adjustments on the basis of cost or market, whichever was the lower.

5. In the amended income and excess profits tax returns for 1917 no changes were made from the original returns except with respect to the inventories at the beginning and the end of that year. Those changes were as follows: The inventory at January 1, 1917, on the amended returns exceeded the inventory on the original returns by the amount of $515,917.56; that is to say, the inventory at January 1, 1917, as reported on the original returns was $3,718,469.76, and the same inventory, as reported in the amended returns, was $4,234,387.32, a difference of $515,917.-56, which amount was added to and included in the invested capital reported in the amended returns. The inventory at December 31, 1917, as reported on the original returns, was $4,253,561.16, and the same inventory as reported in the amended returns was $5,579,-546.30. The difference between the increase in the inventory at January 1, 1917, and the increase in the inventory at December 31, 1917, namely, the difference between $1,325,-985.14 and $515,917.56, or $810,067.58, was added to and included in the net taxable income reported in the amended returns.

The amended returns for 1917 showed a net taxable income of $2,807,822.41, an income tax of $120,535.58, an excess profits tax of $792,188.78, and a total tax of $912,-724.36. From this amount there was deducted the total tax theretofore paid for 1917 of $479,325.75, leaving an additional tax of $433,398.61 shown to be due by the amended returns.

6. The additional tax shown to be due on the amended returns was not paid at the time of the filing thereof. The amount was timely assessed, and payments on account thereof were made in the manner and under the circumstances hereinafter set forth.

The inventories shown in the original returns agreed with the inventories in the plaintiff's books as concurrently reported in the years made. The inventories stated in the amended returns filed January 20, 1922, were made in accordance with the provisions of article 1582 of Regulations 45.

The plaintiff employed no accounting system that would enable it to ascertain the actual cost of any precise article contained in its stock of merchandise at a given time. Goods purchased during 1917 were purchased at different prices and were placed with other like merchandise in the same stock room or bins. At the end of the calendar years 1916 and 1917 the trend of the market was upward.

The inventory costs arrived at in the amended returns in accordance with the provisions of article 1582, Regulations 45, were not the actual costs of the articles of merchandise on hand at the end of 1916 and at the end of 1917. The reason said costs were not actual costs was due to the fact that, according to the practice of the plaintiff, the last goods purchased were the first goods sold in the majority of cases. Under the practice of the plaintiff, an article placed at the bottom of a bin in the warehouse remained in the bin, unless the supply in the bins was exhausted. Purchases from time to time by the plaintiff were placed on top of other articles in the bins or in front of articles in the warehouse or storeroom, and sales were made from the top of the bins, and from in front of the stock. Plaintiff followed this practice for the reason that the greater portion of its merchandise was not perishable and the business was such as to make it expensive to move it. Had plaintiff arranged its merchandise so that the earlier purchases could have been the first sold, the cost of such handling would have about equaled the cost to the plaintiff of handling the merchandise in the manner in which it did.

7. Plaintiff's inventories were priced on its books at a figure or value which, in its opinion, would be realizable under any conditions foreseeable. The principle of so pricing its inventories on its books was consistently followed from year to year, and prior to 1915 the prevailing market was near the values adopted. Thereafter the market prices were greater than the inventory prices shown on the books.

The plaintiff regarded its stock of merchandise to a large extent as the same stock

that had been on hand for several years, and considered that its method of pricing inventories stated them at near the actual cost thereof. During 1917 plaintiff believed that the war prices for the merchandise handled by it would be followed by lower prices after the war. This occurred, and the amount of the decline in market prices was equal to the amount of the difference between the inventory value, according to the Treasury Regulations, and the value according to the method pursued by the plaintiff.

Plaintiff's inventories were valued by its employees in charge of each department who had authority to buy and sell, coextensive with the departments in which they were in charge.

8. Plaintiff's net income for 1917 on the cash receipts and disbursements basis was $996,535.47.

The aforementioned amended income and profits tax returns for 1917 were accompanied by requests of the plaintiff for a computation of its profits tax under section 210 of the revenue act of 1917.

On June 2, 1922, the Commissioner of Internal Revenue made an assessment of an additional tax of $433,398.61 for 1917, being the amount shown by the plaintiff on the amended returns for that year. This additional assessment appeared on the Commissioner's assessment certificate which reached the office of the collector for the district of Minnesota on June 5, 1922.

9. June 6, 1922, the first notice and demand for payment of the additional tax was sent to the plaintiff by the collector. On June 13, 1922, plaintiff filed a claim for the abatement of the tax assessed by the Commissioner for 1917 and also for the abatement of the taxes assessed by the Commissioner for 1909 to 1919, inclusive. The amount specified in the abatement claim was $636,820.36. The reason stated in this claim for abatement was that the plaintiff was entitled to special assessment and the requests therefor were under consideration by the Commissioner.

This claim in abatement was accepted by the collector June 13, 1922, and was forwarded to the commissioner June 15, 1922.

10. Upon receipt of plaintiff's claim for abatement for 1917 and other years, the collector on June 13, 1922, made a notation on the assessment certificate with reference to the filing thereof and all further efforts to collect the tax assessed were suspended and stayed pending action on the claim by the

Commissioner, including the withholding by the collector of the second ten-day notice and demand and warrant of distraint sent to all delinquent taxpayers of record on the same list on June 20 and July 7, 1922, respectively. According to the usual custom and in the ordinary course of making collections of taxes, the assessment for 1917, against which the plaintiff filed a claim in abatement, would have been paid voluntarily or collected by the collector under a warrant of distraint on or before July 7, 1922, had such collection not been stayed by the filing by plaintiff of the claim for abatement.

11. Under the provisions of the Revenue Acts relating to taxes for 1917 and subsequent years, a taxpayer who failed to pay a tax after ten days from the date of the collector's notice and demand was liable to a penalty of 5 per cent. thereof, plus interest of 1 per cent. per month on the amount of the tax so remaining unpaid. The statute further provided that with respect to so much of the tax as was made the subject of a bona fide claim for abatement the 5 per cent. should not be added, and the interest to be collected on that portion of the tax with respect to which the claim should be rejected should be at the rate of one-half of 1 per cent. per month, or 6 per cent. per annum. Before the claim for abatement filed by the plaintiff was taken up by the Commissioner for consideration, the representatives of the plaintiff came to Washington and had a conference with the representatives of the Commissioner with reference to the additional assessments of the additional taxes shown on the amended returns for 1917 and other years, and the plaintiff was advised by the commissioner that the collector would be asked to file a collector's claim for abatement "which would stop interest and practically put the case where it was before assessment was made."

Articles 1032 and 1033 of Regulations 62 relate to the filing of claims for abatement by a taxpayer and the preparation of a blanket claim for abatement, form 843, or form 53 by the collector, under certain circumstances.

12. Pursuant to the conference with the plaintiff's representatives, the Commissioner, on July 7, 1922, wrote the collector of internal revenue at St. Paul, Minnesota, as follows:

"The Marshall-Wells Company, of Duluth, Minnesota, voluntarily filed consolidated returns of net income for several years and submitted therewith request for consideration

under the relief provisions of the several acts. Assessment of the additional taxes indicated by the amended returns was consummated before consideration was given to the request for relief and against the assessment the company filed claim for abatement. It is believed that the assessment was premature and that it should not have been made until the other questions involved were considered. Hence, it, is desired that you submit your claim for abatement for the amount of the assessment, thereby in effect canceling the company's claim.

"It is understood that a similar condition exists with respect to the Fidelity Investment Company, the subsidiary of the Marshall-Wells Company, and similar measures should be taken by you."

Pursuant to the aforesaid letter, the collector, on July 20, 1922, prepared a collector's claim in abatement for 1909 to 1919, inclusive, in the sum of $686,820.36, stating therein that "This claim is made in accordance with a letter from the commissioner, dated July 7, 1922 (no symbols, signed by C. P. Smith, acting commissioner B), which stated that the assessments were premature inasmuch as consolidated returns were filed voluntarily with a request for consideration under the relief provisions of the several acts."

The collector took no further action looking to the collection of the taxes assessed for 1909 to 1919, inclusive, until April, 1924, as hereinafter set forth.

13. On July 13, 1922, the plaintiff, by its secretary, wrote a letter to the collector of internal revenue at St. Paul, Minn., in part as follows:

"I met Mr. Harris in Washington. I was there June 29th and 30th and July 1st. We went into the consolidated and special assessment sections, and other sections, and had an interview with Assistant Commissioner Babson. We were told by all that it was regular that the assessment should have been made on the amended returns filed by us. We were not satisfied that this should have been done, when we filed briefs for relief and without a chance for appeal. We were able to make an appointment at the commissioner's office, and were there told that a letter would be sent to you, asking you to file with the commissioner a collector's claim for abatement, and that it would be accepted; which would stop interest, and practically put the case where it was before assessment was made.

"We had not been expecting a conference on our case until it had reached the special assessment section. What disturbed us, of course, was that it should have gone to assessment in the consolidated section before going to the special assessment section.

"We found that Mr. Harris was giving our matters careful attention, and that he was well received everywhere.

"We are waiting now for completion of the audit of the amended returns in the consolidated section. * * *"

On July 28 the collector of internal revenue wrote the plaintiff as follows:

"Reference is made to your telephone call concerning a letter of the Commissioner of Internal Revenue, instructing this office to file collector's claim for abatement of additional corporation income tax assessed against you for the years 1909 to 1919, inclusive, in the amount of $686,820.36.

"Upon examining the files of this office it is found that the letter of the commissioner dated July 7, 1922, was received in this office on July 10, 1922, and also that this office prepared the claim for abatement in accordance with the commissioner's instructions and forwarded the same to the office of the commissioner on July 25, 1922."

The only reason advanced by the plaintiff in its claim for abatement of the additional tax assessed for 1917 and subsequent years was that its profits tax for those years should be determined and computed under the relief provisions of sections 210 of the Revenue Act of 1917 (40 Stat. 307) and 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). Plaintiff actively prosecuted its claim for abatement and its application for relief. Its claim for abatement for 1917 and its application for computation of the profits tax under the relief sections were considered, and the Commissioner through the Income Tax Unit of the Bureau of Internal Revenue, in a letter mailed to the plaintiff over the signature of the Deputy Commissioner of Internal Revenue, and signed by S. Alexander, head of division of Income Tax Unit, advised the plaintiff that its claim for abatement for 1917 and other years had been examined and rejected by reason of the denial of its claim for computation of its profits tax under the relief sections. This letter was in part as follows:

"Your claim for the abatement of $686,-820.36 corporation income and profits taxes for the years 1909 to 1919 has been examined and is hereby rejected for the reason that your claim for relief under the provisions of section 210 of the Revenue Act of 1917 and

sections 327 and 328 of the Revenue Act of 1918 has been denied.

"The collector of internal revenue for your district will be officially notified not less than thirty days from the date of this letter of the rejection of your claim and upon receipt of notice and demand from that official, payment should be made to his office in accordance with the conditions of his notice."

14. On the same day, to wit, January 5, 1923, the Commissioner, through the Income Tax Unit of the Bureau of Internal Revenue, in a letter mailed to the plaintiff over the signature of the Deputy Commissioner of Internal Revenue, and signed by S. Alexander, head of division of the Income Tax Unit, advised the plaintiff that a further consideration of its returns disclosed an additional tax due in the sum of $24,475.35 for 1917 in excess of the amounts which had been assessed on the original and amended returns filed by the plaintiff for that year. This letter contained various statements and schedules showing the details of the determination by the Income Tax Unit by which the further additional tax of $24,475.35 was arrived at, and was in part as follows:

"An examination of your income-tax returns and those of your affiliated companies together with the information heretofore submitted has been made, and the results thereof outlined in the attached statement, and accompanying schedules.

"In accordance with the provisions of section 250 (d) of the Revenue Act of 1921 (42 Stat. 265) you are granted thirty days from the date of this letter within which to file an appeal and show cause or reason why this tax or deficiency should not be paid. No particular form of appeal is required, but if filed, it must be in triplicate and set forth specifically the exceptions upon which it is taken, shall be under oath, contain a statement that it is not for the purpose of delay, and the facts and evidence upon which you rely must be fully stated. The appeal, if filed, must be addressed to the Commissioner of Internal Revenue, Washington, D. C., for the specific attention of IT:SA:CR:D–MKC and will be referred to the Income Tax Unit before transmittal to the agency designated for the hearing of such appeals.

"You may, if desirable, request a conference before the Income Tax Unit in connection with the appeal, to be held within the period prior to the expiration of five days after the time prescribed for the filing of the appeal. If the Income Tax Unit is unable to concede the points raised in your appeal, it will be transmitted, together with the recommendation of the Income Tax Unit, to such agency as the commissioner may designate for final consideration.

"In view of the limitation of time for making additional assessments as provided in the revenue act of 1921, together with the desire of the Income Tax Unit to make additional assessments only after careful consideration of all the facts in the case, it will be necessary, if an appeal is filed as indicated above, to execute and return the enclosed form of waiver with such appeal.

"Where a taxpayer has been given an opportunity to appeal and has not done so as set forth above, and assessment has been made, or where a taxpayer has appealed and an assessment in accordance with the final decision of such appeal has been made, no claim in abatement of the assessment shall be entertained.

"Payments should not be made until the bill is received from the collector of internal revenue of your district, and remittance should then be made to him."

15. On January 27, 1923, within the time allowed by section 250 (d) of the Revenue Act of 1921, the plaintiff appealed to the Commissioner of Internal Revenue from the decision of the Income Tax Unit of his office denying its application for relief and rejecting its claim for abatement, and the determination of a further proposed additional tax of $24,475.35, as set forth in the letters of the Income Tax Unit of January 5, 1923. The Commissioner designated the Committee on Appeals and Review of the Bureau of Internal Revenue to hear and consider the plaintiff's appeal from the decision of the Income Tax Unit.

January 25, 1923, the plaintiff executed and filed with the Commissioner a "consent to a determination, assessment, and collection of the amount of income, excess profits, or war profits taxes due under any return made by or on behalf of the Marshall-Wells Company for the year 1917 under the Revenue Act of 1921, or under prior income, excess profits, or war profits tax acts, * * * irrespective of any period of limitations." This consent was approved and signed by the Commissioner February 24, 1923. This waiver expired April 1, 1924, under the ruling of the Commissioner contained in mimeograph 3085 dated April 11, 1923.

16. The assessment and collection of a proposed additional tax of $24,475.35 for 1917, as set forth in the letter of January 5, 1923, was stayed and withheld by the Com-

missioner because of the pendency of plaintiff's claim for abatement of 1917 until final decision had been made on the plaintiff's appeal from the decision of the Income Tax Unit denying its claim for special relief and rejecting its claim for abatement, for the reason that, if plaintiff's claim for special relief should be finally allowed, the proposed additional tax would not be due. The plaintiff's appeal related to the proposed additional tax as well as the amount which had been assessed.

17. The plaintiff actively prosecuted its appeal to the Commissioner and its application for special relief before the Committee on Appeals and Review, an advisory body to the Commissioner.

A hearing was accorded the plaintiff before a subcommittee of the Committee on Appeals and Review at the office of the collector of internal revenue at St. Paul, Minn., May 19, 1923.

June 26, 1923, the committee made recommendation F–4476 in the matter of the appeal of plaintiff for 1917 and 1918, in which the committee determined and recommended to the Commissioner that the action of the Income Tax Unit of the Commissioner's office in denying the plaintiff's application for computation of the profits tax for 1917, under the provisions of section 210 of the Revenue Act of 1917, be sustained. This decision and recommendation of the committee was approved in writing by D. H. Blair, Commissioner of Internal Revenue, but the date of such approval is not disclosed by the record.

October 9, 1923, the chairman of the committee mailed to the plaintiff's representative a letter stating in part as follows:

"This is to advise you that the Commissioner of Internal Revenue has approved the recommendation of the Committee on Appeals and Review in the case of the above-mentioned appeal from the action of the Income Tax Unit in denying it assessment of profits tax for the year 1917, under the provisions of section 210 of the Revenue Act of that year and for the year 1918 under the provisions of sections 327 and 328 of the Revenue Act of 1918. * * *

"In view of the foregoing the committee recommends that the action of the Income Tax Unit in denying the Marshall-Wells Company assessment of profits tax for the year 1917, under the provisions of section 210 of the Revenue Act of that year, and for the year 1918, under the provisions of sections 327 and 328 of the Revenue Act of 1918, be sustained."

18. February 9, 1924, the Commissioner advised the plaintiff by letter, as follows:

"This is to advise that the Committee on Appeals and Review in Recommendation No. F 4476 has sustained the action of the bureau in denying assessment of your profits tax for the year 1917 under the provisions of section 210 of the Revenue Act of 1917 and for the year 1918 under the provisions of sections 327 and 328 of the Revenue Act of 1918.

"The additional tax shown in bureau letter dated January 5, 1923, will be assessed at once. The overassessments shown in the above-named letter will be made the subject of certificates of overassessment which will be issued through the collector of internal revenue for your district and will be applied by that official in accordance with the provisions of section 252 of the Revenue Act of 1921 (42 Stat. 268).

"It is noted that a waiver duly executed by you consenting to the assessment of additional taxes for the year 1917 is on file in this office."

The additional tax of $24,475.35 for 1917 proposed in the letter of the Income Tax Unit of January 5, 1923, was assessed by the Commissioner February 19, 1924, and was paid by plaintiff April 15, 1924, as hereinafter set forth. This additional tax resulted from adjustments made by the Bureau other than with reference to the inventories for 1917.

19. The claim for abatement filed by plaintiff June 13, 1922, hereinbefore referred to, bears notations, dates, and signatures showing the assessments, audit, and rejection thereof by the Income Tax Unit, which action was approved by the four members of the Committee on Claims who on December 18, 1922, signed the certificate on the abatement claim. The blanket abatement claim filed by the collector pursuant to the Commissioner's letter of July 7, 1922, bears only the stamp, "Rejected 2231 I. T. Schedule."

On March 19, 1924, the Commissioner signed rejection schedule, No. 2231, rejecting the claim for abatement filed by the plaintiff, as well as the blanket claim for abatement prepared by the collector. The following appeared on this rejection schedule:

"Collector of Internal Revenue, Minn. District:

"The following claims, 20 in number, for the refunding, abatement, or credit of taxes

have been examined and are hereby rejected in full:

each year was fixed at what claimant deemed to be the normal average value of such goods.

| Assessment list | | | | Name and address | Amount |
|---|---|---|---|---|---|
| Month | Year | Page | Line | | |
| 4 | ............. | 347-367 | ............. | ............. | ............. |
| ............. | 1918 | 474 | 1 | Marshall-Wells Co............. | $453,364.19 |
| 5 | 1922 | 335-343 | ............. | Marshall-Wells Co............. | 686,820.36 |

"D. H. Blair, Commissioner."

Rejection schedule 2251 was received by the collector March 27, 1924, and on April 26, 1924, he issued notice and demand for additional taxes due for 1917 in the amount of $433,398.61, the additional tax of $24,-475.35 for 1917 having been paid by plaintiff on April 15, 1924.

20. Payments on account of additional taxes for 1917, other than said payment of $24,475.35, were made by the plaintiff as follows:

May 6, 1924..................$ 30,641.35
May 6, 1924.................. 381,542.67
May 22, 1924.................. 180.28
May 28, 1924.................. 19,946.54
June 6, 1924.................. 2.15
June 25, 1924.................. 108.33

Total ..................:$432,421.32

The balance of the aforementioned additional tax of $433,398.61 for 1917, i. e., $977.-29, was never paid by plaintiff. No interest was paid by the plaintiff or collected by the collector with respect to any portion of the additional assessments of $433,398.61 and $24,475.35 for 1917, which additional assessments were paid in 1924.

21. June 26, 1926, plaintiff filed a claim for refund of $353,418.73, or such greater amount as might be legally refundable, for 1917, stating therein that the application for refund should be allowed, for the reasons that:

"The additional tax in question was assessed and collected as a result of the action of the Bureau of Internal Revenue in adjusting claimant's inventory basis to that of 'Cost or market whichever was lower.'

"Claimant's taxable income as reported on its original return was computed strictly in accordance with the method of bookkeeping consistently used by claimant and upon the basis upon which its accounts were kept. By such method and basis inventories were not valued at cost or market whichever was lower but as follows: The value of stocks of goods on hand at the beginning or end of

"Claimant contends that its taxable income for 1917 should be computed on the basis upon which its accounts were kept and that its inventories should not have been adjusted to cost or market whichever was lower but should have been valued upon the basis regularly adopted by the claimant as above stated.

"If taxable income for 1917 be not computed on the basis and in accordance with the manner in which claimant's books are kept, then income of that year must be computed on the basis of cash receipts and disbursements."

The Commissioner rejected this claim for refund September 11, 1926.

22. March 18, 1927, plaintiff filed a claim for refund of $433,398.61, or such additional amount as might be legally refundable, for 1917 on the sole ground that collection of the aforesaid amounts was had after the expiration of the period prescribed by law within which such collection could be made. This claim for refund has never been acted upon by the Commissioner.

Lyle T. Alverson, of New York City (Johnson & Shores, of New York City, on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (James A. Cosgrove, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The first question is whether the plaintiff is entitled to recover the amount of $456,-896.67 sued for on the ground that the 1917 tax in that amount was collected after the expiration of the statute of limitation. It contends that the total amount sued for constitutes an overpayment for 1917, as defined in section 607 of the Revenue Act of 1928, and bases this claim upon the contentions, first, that the abatement claim filed by it did not stay the collection of the additional tax for 1917, that the additional assessment was

premature and, in order to avoid the effect of the assessment upon the plaintiff, the collector filed his claim in abatement which had the effect of canceling the plaintiff's abatement claim, and that it was the collector's claim that stayed the collection and was the claim which the Commissioner considered and rejected; and, secondly, that, as to the additional tax for 1917, in the amount of $24,475.35 assessed February 19, 1924, and collected April 15, 1924, no abatement claim. was filed which stayed collection.

The plaintiff insists therefore that under these circumstances section 611 of the Revenue Act of 1928 is inapplicable. It further contends that its appeal from the decision of the Income Tax Unit was decided by the Committee on Appeals and Review, June 26, 1923; that it did nothing further which stayed collection of the tax assessed or assessment of a further additional tax; that the statute in force at the time prohibited further delay by the taxpayer after decision on appeal; and that the delays in collecting the additional assessments of $433,398.61 and $24,475.35 for 1917, until after April 1, 1924, were due to the delay of the Commissioner in proceeding promptly in the matter.

■ We are unable to agree with the claim of the plaintiff that the provisions of section 611 of the Revenue Act of 1928 are not applicable to the tax of $456,896.67, represented by the additional assessments of $433,398.61 made June 2, 1924, and $24,475.35 made February 19, 1924. Both of these assessments were made within the period of limitation properly applicable thereto and the facts show that collection thereof was stayed by the claim for abatement filed by plaintiff against the additional assessment of $433,398.61.

The ground of plaintiff's claim for abatement of the additional assessment was that the corporation was entitled to have its profits tax for 1917 determined and computed under the provisions of section 210 of the Revenue Act of 1917 (40 Stat. 307). The facts establish that it was the plaintiff's abatement claim that caused the delay in collecting the additional assessment and the delay in collecting the further additional tax beyond the limitation period. The facts further show that it was the plaintiff's abatement claim the Commissioner considered and finally rejected. The collector's abatement claim was prepared pursuant to the instructions of the Commissioner only for the purpose of relieving the plaintiff from the payment of the interest imposed by the statute upon the delayed payment of such portion of the additional tax for 1917 finally determined to be due. But for the filing of plaintiff's abatement claim, the additional tax of $433,398.61, assessed June 2, 1922, would have been collected on or before July 7, 1922, and the further additional tax of $24,475.35 proposed in the Bureau letter of January 5, 1923, would have been assessed and collected prior to the expiration of the statute of limitation on April 1, 1924. The fact that no claim in abatement was filed by the plaintiff directed specifically against the additional tax of $24,475.35, after it was proposed or assessed, is immaterial, in view of the language, and the evident purpose and intent of section 611. The claim in abatement which the plaintiff filed in fact delayed the collection of this item for 1917, and the appeal by the plaintiff to the Commissioner from the decision of the Income Tax Unit denying its application for relief, as claimed in its abatement claim, was directed as well to the proposed additional assessment of $24,475.35 as to the additional assessment of $433,398.61 theretofore made.

■ We are of opinion that there is no merit in the claim of the plaintiff that section 611 is not applicable, on the ground that the delay in collecting the entire additional tax of $456,896.67 was the result of the failure of the Commissioner promptly to act after the Committee on Appeals and Review had made its decision on the appeal. The Commissioner approved the recommendation of the committee on or about October 9, 1923. So far as appears, the matter of officially notifying the taxpayer of the action taken on its abatement claim, the preparation of the assessment list, the making of the assessment of the further additional tax of $24,475.35, and the preparation of the schedule of rejection of the abatement claim proceeded through the Bureau of Internal Revenue in the usual way. The fact that the decision to reject plaintiff's abatement claim was reached some time before the expiration of the period within which collection of the additional tax could be made does not render the provisions of section 611 inapplicable. In Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 191, 75 L. Ed. 415, the court said: "In No. 36, Graham v. Goodcell, however, the claim in abatement was rejected in December, 1922, and the period of limitation did not expire until March, 1923. It is urged that, for this reason, that case falls outside the purview of section 611. The statute makes no such exception, and we are not warranted in imply-

ing one. The claim in abatement had been filed and was pending for nearly three years. *There is room for the inference that had it not been for this delay, the tax would have been collected before the statute ran. The tax was collected later and the statute, by its terms, is applicable."* (Italics ours.)

In the case of this plaintiff, the Commissioner officially rejected the claim for abatement March 19, 1924, and the tax in question was collected on different dates between April 15 and June 25, 1924. The plaintiff is therefore not entitled to recover on its claim that the additional tax of $456,896.67 collected and paid in 1924 constituted an overpayment within the meaning of section 607 of the Revenue Act of 1928 (26 USCA § 2607).

The next question is whether the plaintiff is entitled to recover on the ground that its inventories at January 1 and December 31, 1917, were correctly stated in its original return filed for 1917 and that the Commissioner was in error in requiring the plaintiff to state its inventories in accordance with the method prescribed in article 1582, Regulations 45, which provided in part that "Goods taken in the inventory which have been so intermingled that they can not be identified with specific invoices will be deemed to be the goods most recently purchased."

When the plaintiff filed its original return for 1917, the inventories used in determining its income for that year were priced "at a figure or value that would in its opinion be realizable under any conditions foreseeable." The exact manner in which this was done does not definitely appear, other than that it was based on the theory that the stock on hand was practically the same as had been on hand for several years, and therefore the cost of such goods would be their cost when acquired regardless of the fact that many times that amount had been purchased and sold in the meantime. Plaintiff kept on hand about a four months' supply of a given article. The trend of the market was upward, and therefore, if recent purchases had been considered, the inventory values would have been greater than those used. Plaintiff contends, however, that the replenishing of its supply did not affect its normal supply, since the goods most recently purchased were first sold, thus leaving the old goods on hand.

Subsequent to the filing of the original return for 1917, the Commissioner in the latter part of October or the first of November, 1919, rendered a decision which was adopted as the ruling of the Bureau of Internal Revenue in which methods similar to that followed by the plaintiff in the original return were disapproved. This decision and ruling was published in 1919, being T. B. R. 65, I. C. B. 51. After the publication of this ruling and after the plaintiff's attention had been called to the fact that the government regulations required a different method of preparing its inventories from that which it had pursued, the plaintiff on January 20, 1922, voluntarily filed an amended return for 1917 in which the inventories were prepared in accordance with article 1582, Regulations 45, which provides, so far as material here, that "Inventories must be valued at (a) cost or (b) cost or market, as defined in article 1584 as amended, whichever is lower. * * * Goods taken in the inventory which have been so intermingled that they can not be identified with specific invoices will be deemed to be the goods most recently purchased."

The foregoing regulation, which was promulgated pursuant to the authority granted in section 203 of the Revenue Act of 1918 (40 Stat. 1060), merely provides for the pricing of inventories in a manner generally recognized in good accounting practice, that is, the inventories may be priced at either "cost" or "cost or market, whichever is lower," and in carrying out whichever method is adopted, where fungible goods are involved which cannot be identified by specific invoices, the cost of such goods will be computed upon the basis of the most recent purchases. The Revenue Act of 1916, as amended by the Revenue Act of 1917, did not specifically contain the authority granted by section 203 of the Revenue Act of 1918, but the same rule as to pricing inventories was applicable to 1917. Chicago Frog & Switch Co. v. United States, 68 Ct. Cl. 186. The contention of plaintiff is that the method prescribed by the regulations and followed by it in its amended return leads to an arbitrary and capricious result, and that the inventories as reflected in the original return should be accepted. More specifically, the plaintiff objects to the use of inventories which places thereon costs on the principle that the first goods purchased were the first goods sold and therefore the goods on hand at a given inventory date were those most recently purchased. It insists that the principle should be reversed, and that the inventories should be prepared on the basis that the sales were always made from the most recent purchases, and therefore the goods on hand at a given date were those first purchased. How far back the plaintiff would go in having us arrive at the "first purchases" does not definitely appear, though a witness for plaintiff testified that "We consid-

ered our stock was practically the same stock we had for several years." This is little more than another way of expressing the idea of a "base stock" method of inventories where a given quantity of goods on hand at all times is assigned the same price year after year. The reasons for rejecting such a system of valuing or pricing inventories is sufficiently stated in the Commissioner's ruling referred to above, T. B. R. 65, as well as in Lucas v. Kansas City Structural Steel Co., 281 U. S. 264, 50 S. Ct. 263, 74 L. Ed. 848, and Chicago Frog & Switch Co. v. United States, supra. But, even if we should examine plaintiff's inventories, as it urges we should, in an attempt to fix inventories based on actual cost, we are unable to see wherein it avails the plaintiff anything. The testimony of one of its witnesses shows that it had no accounting system which would enable it to identify particular goods and affix thereto their particular cost. To meet this deficiency in its system, the plaintiff introduced proof to show that its sales were made from the top of bins in which the articles were stored, and that, when it became necessary to replenish its supply, new articles were placed on top or in front of the old stock. Plaintiff therefore contends that the goods on hand in 1917 were those purchased long prior to 1917, and that it should have its inventories priced at these old costs. We find little merit in this position.

The plaintiff was a dealer in hardware and related merchandise of various kinds, including builders' hardware, mechanics' tools, stoves, mining and railway supplies, cutlery, sporting goods, automobile supplies, and heating and plumbing supplies. The number of items was from 45,000 to 60,000. It was necessary to replenish the stock about three times each year; the average stock being sufficient for approximately four months' business. It may be that in some isolated instances the old stock remained on hand to the extent that the sales were made entirely from new purchases, but in large inventories, such as that with which we are here concerned, it would be going further than we think we would be justified to say that any substantial part of the original supply remained undisturbed over a long period of years. That some part of the original goods remained unsold is not equivalent to saying that the entire stock of goods on hand at a given inventory date represented purchases made many years prior thereto where the equivalent of such stock had been replenished over and over again. Such a situation is not comparable with that considered in Ozark Mills, Inc.,

v. Commissioner, 6 B. T. A. 1179, in which the actual cost of goods on hand was shown and therefore it was unnecessary to resort to a principle of presumption as to what goods were on hand. In the present case the original inventories which we are asked to accept do not purport to represent actual costs, but rather some kind of an approximation based on the cost of the original supply of the various articles sold.

In these circumstances we cannot adopt the inventories used in the original returns for 1917 as representing inventories acceptable for income tax purposes. The plaintiff has the burden of showing that the method prescribed by the Commissioner's regulation and followed by him in the inventories accepted and used did not correctly reflect income and was not in accordance with good accounting. Chicago Frog & Switch Co. v. United States, supra. We are of opinion that this burden has not been sustained by plaintiff, and that it has not been shown that an arbitrary or capricious result has followed from the Commissioner's action. The claim of plaintiff for a revised income based upon the inventories used in its original return is therefore denied.

The petition is dismissed. It is so ordered.