## Appeals of JACOB ROFFWARG AND MORRIS·WEISER.

Docket Nos. 1379, 1380.   Submitted March 9, 1925.   Decided July 11, 1925.

> Evidence *held* insufficient to support taxpayers' contention that their taxable income was otherwise than as determined by the Commissioner.

*David Kamerman, C. P. A.,* for the taxpayers.
*Willis D. Nance, Esq.,* and *James T. Dortch, Esq.,* for the Commissioner.

Before IVINS and LANSDON.

These appeals involve the same facts and were heard together. That of Jacob Roffwarg involves income taxes for the years 1919 and 1921, in a deficiency of $7,628.70.   That of Morris Weiser involves income taxes for the years 1919, 1920, and 1921, in a deficiency of $7,604.58.   Question is raised only as to taxes for 1919.

From March, 1918, to March, 1921, the taxpayers were engaged as partners in the wholesale silk and dress goods business, with location in New York City.

Upon an audit of the returns of the taxpayers made by the Commissioner in 1923 and 1924, incomplete accounting records were produced by the taxpayers as to the year 1919.   In the absence of satisfactory explanations as to the returns, the Commissioner assumed that the same percentage of profit was made on gross sales by the partnership as was made by concerns engaged in a similar line of business, according to his records.   The application of that method increased the net income of the partnership from $17,126.25 for 1919, as disclosed by the returns, to $84,937.87, based upon sales in 1919 of $1,304,729.12.·

From the oral testimony and exhibits introduced at the hearing the Board makes the following

### FINDINGS OF FACT.

The taxpayers were copartners engaged in the wholesale silk and dress goods business in the City of New York from March, 1918, to March, 1921.   During a part of this period they had an uptown retail store which maintained separate books of account.

In their returns for the year 1919, the taxpayers reported a partnership net income as to their wholesale business of $17,126.25. Upon an audit by the Commissioner no books of account were submitted for the year 1919, except a cash book and a general journal.

The Commissioner, in the absence of records satisfactory· to him, assumed that the partnership made the same percentage of profit on

sales as concerns engaged in a similar line of business, with the resulting computation:

| | |
|---|---:|
| Sales | $1, 304, 729. 12 |
| Gross income (21 per cent) | 273, 993. 12 |
| Net income (31 per cent of gross) | 84, 937. 87 |

For the year 1920 the partnership reported a net loss of $66,832.40. Upon an audit, in addition to the cash book and the journal, a general ledger for 1920 was submitted for examination. The revenue agent found $49,557.46 which had been credited to capital or to the private accounts of the taxpayers with a resulting net loss as corrected of $17,274.94.

For the period from January 1 to March 1, 1921, the partnership reported a net loss of $4,295.38. The revenue agent discovered a failure to include a closing inventory of $8,100.52, with the result that the reported net loss was changed to net income of $3,805.14.

All receipts were deposited in banks. All disbursements were made by checks.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

IVINS: The evidence submitted at the hearing was merely explanatory of how certain certified statements, attached to the petitions, were compiled.

To justify those compilations we are, in effect, asked to accept as true the mere statements in the tax returns as to notes and accounts receivable and payable, the inventories, and other material items, with no opportunity to verify the same from books of original entry.

The cash book is insufficient for any audit purposes. It is impossible to determine from it whether purported expense items were payments to or for the accounts of the individual partners, or were proper business expenses. Withdrawals of capital by the partners in 1920 were made in the amount of $49,557.46. Similar transactions may well have occurred in 1919. There is no means of determining whether note payments were for partnership accounts as distinguished from transactions of the individual partners. The repeated entry of items in the cash book to " Weiser & Roffwarg " accounts and to the names of the individual partners, without clarification by a ledger or testimony, makes impossible any adequate check-up on the cash book. The same is true of entries to alleged names of creditors. They may have been individual matters or they may have related to the uptown retail store.

Various irregularities in the books make it impossible for us to place reliance on the cash book alone as to 1919 income. The revenue agent, in auditing 1920, added $10,806.77 to income by reason of credits to the private accounts of the two partners. The Board finds by an independent examination of the books that this addition should have been $10,868.13 on account of Roffwarg and $8,120.64 on account of Weiser, a total of $18,988.77, instead of $10,806.77. Each partner in 1920 received $1,110.90 in Liberty Bonds; life insurance premiums were paid out of partnership funds in the amounts of $576.20 for Roffwarg and $352 for Weiser. Their personal Federal taxes were similarly paid in the amounts of $1,030.05 and $1,046.04, respectively. These, with other unexplained items, make the above totals. In January, 1921, each received $2,000, and on March 16, 1921, Roffwarg received an additional $3,915.13. How far such amounts were received in liquidation of the partnership affairs we can not ascertain from the records before us.

In the absence of adequate accounting records or a trustworthy detailed audit properly placed in evidence, it is impossible properly to determine the net income of the taxpayers.

The taxpayers have failed to satisfy us that their taxable income for 1919 was otherwise than as determined by the Commissioner.