Leo J. Omelian v. Commissioner. Leo J. Omelian and Helen Omelian v. Commissioner.
Omelian v. Commissioner
Docket Nos. 32675, 32676.
United States Tax Court
1953 Tax Ct. Memo LEXIS 328; 12 T.C.M. (CCH) 306; T.C.M. (RIA) 53091; March 23, 1953
James A. Quisenberry, Esq., for the petitioners. James A. Anderson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax and penalty as follows: Docket No.
Year
Deficiency
Penalty
32675
1947
$5,248.72
$1,049.75
32676
1948
4,674.00
The issues presented are (1) whether the respondent's action is computing the gross profit of the Superior Oil Works, a sole proprietorship, for each of the years 1947 and 1948, on the basis of 30 per cent of net sales, was arbitrary and invalid; (2) whether the respondent erred in disallowing "writedown" of the closing inventory of the Superior Oil Works for 1948 by $25,125.64; and (3) whether the respondent properly assessed a delinquency penalty in *329 the year 1947 for petitioner Leo J. Omelian's failure to file his income tax return within the period prescribed by law. Certain facts have been stipulated and are found accordingly. Other facts are found from the evidence. Findings of Fact Leo J. Omelian and Helen Omelian are husband and wife, residing in Erie, Pennsylvania. For the taxable year 1947, Leo J. Omelian filed a separate return and for the year 1948 petitioners filed a joint return. The returns for such periods were filed with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh. In 1943, Leo J. Omelian, hereinafter referred to as the petitioner, purchased the Bayerson Oil Works and operated the business thereof under the name of Superior Oil Works, as sole proprietor. Late in 1945, the petitioner entered into the business of buying and selling war surplus, used, or second-hand materials. The purchase and sale of the latter materials soon accounted for the greater portion of the business of the Superior Oil Works, amounting to approximately 82 per cent of sales in 1946, 90 per cent in 1947, and 91 per cent in 1948. Petitioner purchased the materials used in the aforesaid *330 business from various sources. Some of his purchases were "lot" purchases. In 1945, petitioner's "lot" purchases of surplus and salvage merchandise totaled $50,758.56. In 1945, the petitioner reported sales of miscellaneous material and equipment totaling $7,571.58 and sales from the established oil products phase of the business totaling $19,992.01. The closing inventory of oil products was reported as $6,723.51. In 1946, petitioner's total opening inventory carried forward from 1945 was reported as $6,723.51, which is identical to the 1945 closing inventory of oil products only. In 1946, the petitioner purchased surplus materials in the amount of $148,000 and oil products in the amount of $11,300, or a total of $159,300, which is $9,532.63 less than the amount of $168,832.62 reported in his 1946 return. Neither the petitioner nor his accountant has ever kept a so-called "perpetual" or "book" inventory of the stock in trade of Superior Oil Works. No physical inventory has ever been taken of the petitioner's merchandise because his warehouse is not equipped with partitions, shelving, bins, etc., and the great quantity of purchased materials is so intermingled that it is not *331 susceptible to cost or selling price identification. It was impossible to assign a cost to the various items of merchandise even if counted, nor was it possible to assign a retail price to any of the items in the inventory. The petitioner made the purchases of surplus and used materials. The petitioner's policy in appraising a "lot" of materials was to examine the items, the value of which to him was ascertainable, to formulate his offer on the basis of the collective worth of such items, and to add to that offer the junk value, if any, of the nondescript items. In the taxable years 1947 and 1948, the petitioner's son had complete charge of the selling as well as the storage and location of the merchandise in stock. The accountant, in his analysis of the petitioner's business policies, found that the petitioner tried to get his money back as soon as possible and that the subsequent sale of whatever materials were left over was almost clear gross profit. The inventory turnover for Superior Oil Works for the years 1946 and 1947 was slightly more than one. The petitioner's accountant devised a formula or method for computing cost of goods sold and dollar value of closing inventories. *332 Application of the first step of the formula adopted involved a calculation predicated on the assumption that 75 per cent of the materials purchased in a year was deemed to have been sold during the same year. The second step involved a calculation predicated upon the assumption that the materials purchased in the year of sale were marked up 25 per cent. In the application of subsequent steps of the formula it is assumed that the selling price of materials attributable to accumulations of prior years included a mark-up of 50 per cent. The petitioner's accountant also devised a formula or method for "writing down" the closing inventory for the year 1948. Application of the first step of such a formula involved a determination of the average of those sales in 1947 and 1948, attributable to the opening inventories for the respective years. In the second step, the average of those sales of prior years, attributable to the opening inventories in the respective years, was then multiplied by four. Next, the product thus obtained was reduced to a purported cost figure by multiplying such product by the average gross operating ratio experienced over the three prior years. The resultant amount *333 was assumed to be the value of the 1948 closing inventory. This latter amount was subtracted from the value of the closing inventory before the "writedown," the result purportedly representing the damage to merchandise resulting from a highway improvement project in 1948 which impeded vehicular ingress or egress to petitioner's premises. Because of the absence of those vital accounting factors from which gross profit is normally computed, the respondent's representative rejected the methods employed by the petitioner's accountant as not being supported by sound accounting theory and as being inconsistent with the respondent's regulations. The Jerry Quirk Company engages in a business adjacent to petitioner's business, and its basic operational procedure is comparable to that of petitioner's. The Quirk Company deals in new and second-hand building materials. In the conduct of its business it buys large quantities of varied, intermingled materials in so-called "lot" purchases. In instances where it is furnished with an invoice, which indicates delivery of materials for a lump sum, a cost assignment is nevertheless made, the basis of which is predicated on the results of the mental *334 cost allocation of the buyer at the point of purchase. This mental cost allocation is determined on an experienced "lot" appraisal, conducted prior to purchase in a manner quite similar to the method employed by the petitioner. Where the nature of the many miscellaneous items purchased is such that the individual cost and/or selling price identification is inappropriate, such materials are valued and sold on a poundage basis. The Quirk Company appropriately segregates and classifies its materials and takes a physical inventory. In 1947 and 1948, the purchase and sale of used materials accounted for approximately 80 per cent of the business transacted by the Quirk Company. In 1948, the Quirk Company realized a gross profit of 50 per cent and in 1949, 60 per cent of net sales. The respondent's representative found from his investigations that other concerns, engaged in similar lines of business to that of petitioner, realized gross profits ranging from 35 to 50 per cent of net sales in the taxable years involved. He, therefore, determined that the petitioner realized a gross profit of 30 per cent on net sales in each of the taxable years 1947 and 1948. Prior to March 15, 1948, petitioner's *335 accountant prepared the petitioner's individual return for 1947. This return was shown to the petitioner at that time, but was not filed until June 15, 1948. On March 15, 1948, petitioner filed a tentative individual return for 1947, which was signed by another individual on the petitioner's behalf. A remittance of $2,500 was enclosed therewith. A request for an extension of 30 or 60 days accompanied the return. The request was not granted. The balance of tax due as reported by the petitioner on his return filed on June 15, 1948, was $6,614.96. The respondent assessed a penalty of 20 per cent on the "Balance of Tax Due," or $1,322.99. The amount of the penalty, determined and asserted by the respondent in the notice of deficiency for the year 1947, is $1,049.75, which is 20 per cent of the deficiency of $5,248.72 determined for such year. The petitioner has failed to carry the burden of establishing that the respondent's determination of the amount of his gross profits for the taxable years 1947 and 1948 on a percentage basis was arbitrary and invalid. The petitioner has failed to establish that he sustained damage to his merchandise in the year 1948 in the amount of $25,125.64, *336 or in any lesser sum. The petitioner has failed to show that his failure to file his 1947 return within the time prescribed by law was due to reasonable cause. Opinion LEMIRE, Judge: The petitioner contends that the respondent's action in computing the gross profits of the Superior Oil Works, a sole proprietorship, on the basis of 30 per cent of net sales was arbitrary and illegal. The petitioner is a dealer in war surplus, used, or second-hand materials. An appreciable portion of his merchandise is purchased in "lots" whereby large quantities of varied articles are bought for a lump sum. The materials purchased are dumped or piled indiscriminately in petitioner's warehouse or storage yard, so that a physical inventory, even if possible, would entail an unwarranted expense. No inventory schedules have ever been set up on petitioner's books whereby a running or perpetual account of the disposition of merchandise is recorded. The petitioner's accountant testified that it was impossible to assign a retail price to any of the items in the inventory, and that no cost could be assigned to the various items of mechandise even if counted or identified. Confronted with such a situation, *337 the petitioner's accountant devised a formula based on certain assumptions and estimates of percentages in order to arrive at the valuation of inventory. After an examination of the petitioner's records and methods of operation, the respondent's representative, upon ascertaining the absence of vital accounting factors, rejected the method employed by the petitioner's accountant as unsupported by sound accounting theory and inconsistent with Regulations 111, relating to inventories. The agent found from his investigation that other concerns in the locality, operating businesses similar, if not identical, to that of the petitioner, realized, in the taxable years involved, a gross profit ranging from 35 to 50 per cent. He, thereupon, determined that the petitioner's income would be more clearly reflected if the petitioner's gross profit was computed on a basis of 30 per cent of net sales. Under the applicable revenue statutes and the regulations adopted pursuant thereto, each inventory must conform as nearly as possible to the best accounting practice in the trade or business and must clearly reflect income. The statutory plan invests the respondent with a great discretion, and *338 to overcome the respondent's action the petitioner must prove that it was arbitrary and invalid. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264; Finance & Guaranty Co. v. Commissioner, 50 Fed. (2d) 1061. Where inventories fail to meet the statute and the governing regulations, the respondent may disregard them and compute net income upon such basis as will, in his opinion, more clearly reflect income, and the courts will not disturb the results of the exercise of the discretion reposed in him by the statute unless plainly aribtrary. Rockwood Pottery Co. v. Commissioner, 45 Fed. (2d) 43. The principal argument of the petitioner is that his method has been consistently followed and that greater weight is to be given to consistency than to a particular method of inventorying or basis of valuation. The Buss Co., 2 B.T.A. 266. The record establishes that, while the same formula was used in the taxable years, the facts found show that it was not used in the preceding years 1945 and 1946. Furthermore, mere consistency is not alone sufficient as a test if the inventories fail in other respects to clearly reflect income C. Willenborg & Co., 5 B.T.A. 788; *339 S. C. Toof & Co., 21 B.T.A. 916, 934. To contend, as petitioner does here, that the presumption of correctness attaching to the respondent's determination is overcome by showing a different result, concededly based on probabilities or estimates, is to urge a proposition which the courts have repeatedly refused to accept as sound. The respondent's method of determining the petitioner's gross profits, based as it was upon comparisons with gross profits realized by companies operating substantially similar businesses during the critical period, has been sanctioned by the courts as the utilization of the most satisfactory method at hand. Jacob Roffwarg, 2 B.T.A. 332. We, therefore, hold that the petitioner has not met the burden of showing that the respondent's action is plainly arbitrary and invalid, and the respondent's computation of the petitioner's gross profit in each of the taxable years involved is sustained. The second issue presents the question whether the petitioner is entitled to a "writedown" of his 1948 closing inventory. The pertinent facts establish that in 1948 the highway fronting the petitioner's place of business was improved by *340 the construction of an underpass. In August of that year the project had progressed to the extent that vehicular ingress or egress to petitioner's premises was impossible. A substitute right of way was provided over property abutting the rear of petitioner's premises, which at times was in an unsatisfactory condition. The petitioner contends that as a result of such conditions certain of his stock in trade was damaged and rendered unsalable. The petitioner's accountant endeavored to reflect such damage by a "write-down" of the 1948 closing inventory by the use of a certain formula set out in our findings. The respondent rejected the formula applied, and determined the petitioner's gross profit for 1948 by the percentage method heretofore outlined. While the loss from obsolete or unsalable merchandise is properly reflected in an adjustment to inventory where proper records are available, under the facts disclosed by this record and for the reasons stated in the discussion of the prior issue, we are of the opinion that the particular formula adopted by the petitioner's accountant in determining the 1948 closing inventory cannot be accepted as establishing the amount of the loss to the *341 petitioner's merchandise. We entertain no doubt that petitioner suffered damage by reason of the conditions previously discussed. The evidence as to merchandise damaged was general. Testimony was presented that certain machinery and drums of oil rusted and certain powders solidified, but the cost to petitioner of any of the merchandise or the value at the time of injury was not shown. There is nothing in the record that would enable us to determine the extent of damage. Lacking any satisfactory proof of the extent of the damage, we sustain the respondent's determination for failure of proof. The final issue involves the question whether the delinquency penalty was properly imposed by the respondent for the taxable year 1947. That the petitioner filed his 1947 return on June 15, 1948, is undisputed. The petitioner presented no evidence to establish that his failure to file his return within the time prescribed by law was due to reasonable cause. Evidence was presented to the effect that the respondent assessed a delinquency penalty at the time the return was filed and notified the petitioner. The petitioner later mailed a check in the amount of $100 in an attempt to compromise the *342 penalty, but received no acknowledgement of the receipt of the check. However, it was shown at the hearing that the check had been cashed by the respondent. Upon such facts the petitioner would have us determine that a compromise of the penalty had been effected by the $100 payment. We think the meager evidence presented is insufficient to justify our concluding that a compromise of the penalty was consummated. We, therefore, hold that the delinquency penalty of 20 per cent, as required by section 291 of the Internal Revenue Code, was properly asserted for the taxable year 1947, and the respondent's imposition of the penalty is sustained. Decisions will be entered for the Respondent.